**UNITED STATES of America, Respondents,**

v.

**Sammy CARIOLA, Petitioner-Appellant.**

**No. 14347.**

United States Court of Appeals Third Circuit.

Argued June 20, 1963.

Decided Oct. 3, 1963.

John W. Condon, Jr., Buffalo, N. Y. (Condon, Klocke, Ange & O'Donnell, Buffalo, N. Y., Salvatore J. Avena, Camden, N. J., on the brief), for appellant.

Ralph J. Kmiec, Asst. U. S. Atty., Camden, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, STALEY, Circuit Judge, and STEEL, District Judge.

STEEL, District Judge.

In 1938 petitioner served a 24-hour sentence imposed by the District Court of New Jersey after pleading guilty to a "technical violation" of the Mann Act, then 18 U.S.C. § 398, now 18 U.S.C. § 2421. In 1962 he filed in the same court a verified document styled "Petition for a Writ of Coram Nobis" which prayed that the conviction and sentence be vacated. The petition alleged that petitioner originally pleaded "not guilty" and had gone to trial, that after the Government had rested, although petitioner was of the belief that the Government had failed to adduce any evidence of his guilt, he withdrew his plea of "not guilty" and entered a "technical plea of guilty", that he did this upon the advice of the Court and his attorney, and with the assurance of the Court that only a 24-hour sentence would be imposed. The petition further alleged that the petitioner did not enter the plea intelligently, understandingly, or

competently, that he believed that the plea was without legal significance and merely a means of terminating the proceedings, that the conviction has been a source of embarrassment and loss of prestige to petitioner as a responsible citizen and union leader, and that if petitioner had fully realized the consequences of the plea, he would not have entered it. The petition was supported by an affidavit of Louis H. Wilderman, his trial attorney, which stated that at the time of the plea he had tried only about five criminal and ten civil cases, and that if he had understood that the petitioner was admitting full, as distinct from technical guilt, he would have urged that the trial be continued.

While neither the petition nor the Wilderman affidavit allege any constitutional violation, it is clear from the briefs that it is petitioner's claim that he was convicted and sentenced in violation of the due process clause of the Fifth Amendment.

The District Court held a hearing at which the petitioner and Wilderman testified and the Clerk's notes and docket entries pertaining to the case were introduced in evidence. Upon this record the District Court rendered an opinion in which it found that petitioner's plea had been entered with sufficient knowledge and adequate advice, United States v. Cariola, 211 F.Supp. 423 (D.N.J.1962), and entered an order denying the relief sought. This appeal followed.

A document substantially like that filed by petitioner has been characterized as a motion in the nature of a writ of error *coram nobis* and has been held to be an appropriate means in a proper case to obtain the vacation of a conviction and sentence after sentence has been served. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

At the outset the Government asserts that the case is moot. It is true that the petition on its face presents no justiciable controversy. Although the petition alleges that the plea was not entered competently or understandingly and was never intended as a plea of actual guilt to the crime charged, the only consequence alleged is the petitioner's embarrassment and loss of prestige. This is not enough to justify a judicial determination of petitioner's rights. The moral stigma of a judgment which affects no legal rights presents no case or controversy of federal cognizance. St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943).

The jurisdictional deficiency of the petition, however, was cured by the proof. At the hearing the petitioner testified that he had been living in Buffalo, New York since 1954 and that because of the position of leadership which he occupied in union affairs, it was particularly important that he participate in political activities. He stated that under the laws of New York his conviction in 1938 makes it a crime for him to vote. New York Penal Law, § 510—a, which makes it a criminal offense for a person who has been convicted of a felony to vote, has been in effect during the period of petitioner's residence in New York. See also § 152(4) of the New York Election Law. Thus, the judgment of conviction, although satisfied, has affected and continues to affect petitioner's legal rights. The validity of the conviction, therefore, is not moot. A case cannot be said to be moot when a conviction entails collateral legal disadvantages which survive the satisfaction of the sentence. Government of Virgin Islands v. Ferrer, 275 F.2d 497, 499 (3d Cir., 1960). One may challenge a satisfied judgment of conviction when it has been the basis for a second offender sentence under a later conviction, United States v. Morgan, supra; or has subjected an alien to deportation proceedings, Fishwick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946); or, as here, may bar the exercise of voting rights, Kyle v. United States, 288 F.2d 440 (2d Cir., 1961).

The Government asserts that there is no evidence that petitioner's conviction has in fact deprived him of his right to vote in New York. The

attempt of the Government to cross examine petitioner on his voting activities was thwarted by the Court when it sustained the petitioner's Fifth Amendment refusal to answer upon the ground that it might tend to incriminate him. Whether plaintiff actually voted in New York is not relevant to the present question. If petitioner has voted, he has done so illegally; and so long as his conviction stands, it will continue to bar him from lawfully exercising one of his most important rights as a citizen. This is sufficient to make the validity of the conviction a justiciable question.

Nor is there merit to the Government's position that the plaintiff is barred from relief because he has delayed 24 years in seeking it. If petitioner has been denied a fundamental constitutional right, the passage of time will not preclude him from relief. The writ of error *coram nobis* was available at common law "without limitation of time." United States v. Morgan, supra, 346 U.S. p. 507, 74 S.Ct. p. 250; Farnsworth v. United States, 98 U.S.App.D.C. 59, 232 F.2d 59, 63, 62 A.L.R.2d 1423 (1956). Although the passage of many years will not cure a conviction if it is void, a defendant who, knowing of his right to relief from a conviction, waits to apply for it until all witnesses have died, will have a heavy burden of proof with respect to the facts on which the relief must rest. United States v. Morgan, 222 F.2d 673, 675 (2d Cir., 1955); Farnsworth v. United States, supra, 232 F.2d p. 63. Here, petitioner did not unreasonably delay seeking relief. It was not until 18 months before his petition was filed that he first learned, as a result of advice from his present attorney, that he had been convicted of a felony and not a misdemeanor.

This brings us to the merits of the case. In September 1937 the petitioner and three others were indicted by the Grand Jury of the District of New Jersey for violating the Mann Act. On November 5, 1937 petitioner pleaded not guilty. On January 24, 1938 petitioner was tried separately from his co-defendants before Judge Avis. He was then represented by Louis H. Wilderman, Esquire. After the Government rested its case, Judge Avis called the petitioner, his attorney, and the United States Attorney to the bench. According to the petitioner:

> "He [Judge Avis] then said to the U. S. Attorney that he didn't think that the government has proved its case and he then turned to me and he said, 'I think under the circumstances there is a minor violation here, a technical violation, and my advice to you would be to change your plea to a technical plea of guilty, and if you do that I will sentence you to 24 hours in the custody of the U. S. Marshal.'"

Wilderman testified:

> "Judge Avis called us up to the bench at the time and he indicated primarily that he didn't think it was much of a case there by the government; that at the most this was the most technical violation possible that you could think of; * * So Judge Avis said, he suggested that we should enter a technical plea of guilty, and if so, he said, 'Just let him sit in the courtroom for the rest of the day and that will be it and he can go home.'"

This is the only evidence of what transpired.[1]

Following the side bar discussion, the petitioner and Wilderman retired and consulted for a few moments. Wilderman advised the petitioner to take Judge Avis' advice. Petitioner then withdrew his prior plea of not guilty. The testi-

1. The efforts of the District Court to obtain more enlightenment were fruitless. It said (211 F.Supp. at pp. 424–425): "This court has made diligent effort to obtain a transcript of the proceedings to ascertain what colloquy transpired between court and counsel. Both trial judge and court reporter are deceased, and the latter's notes are not in existence. It also appears that the Government's records of this case cannot be located."

mony is conflicting as to precisely what plea was entered. Wilderman said that petitioner pleaded "a technical plea of guilty". Petitioner said, "I plead to a technical violation of the Mann Act". Both the docket and notes kept by the Clerk disclose that the petitioner pleaded "guilty", and that by Court order the "plea (was) entered as a technical one". [2] Later, the same day, Judge Forman sentenced the petitioner to one day in the custody of the Marshal. Petitioner served the sentence by sitting in the back of the courtroom for a short time.

The petitioner testified that when he entered his plea he understood that he was pleading to something very minor, that he felt that he was not guilty of the crime, and that he was not pleading 100% to a violation of the Mann Act, but only to its technical violation. According to petitioner, his only activities were the receipt of a phone call while working as a waiter in a nightclub at Atlantic City from a person in Philadelphia requesting him to give a message to a girl to go to a certain address at a certain time in Philadelphia, and the subsequent transmittal of that message to the girl. Although the record does not disclose the fact, the girl apparently went to Philadelphia for purposes of prostitution.

These, in substance, are the facts upon which the petitioner bases his claim that his plea was entered without a full understanding or realization of its consequences in derogation of his constitutional rights.

Coram nobis is an extraordinary writ. The jurisdiction of a court to grant relief under it is of limited scope. Any proceeding which is challenged by the writ is presumed to be correct and the burden rests on its assailant to show otherwise. United States v. Morgan, 346 U.S. 502, 512, 74 S.Ct. 247, 98 L.Ed. 248 (1954). Only where there are errors of fact of "the most fundamental kind, that is, such as to render the proceeding itself irregular and invalid", can redress be had. United States v. Mayer, 235 U.S. 55, 69, 35 S.Ct. 16, 59 L.Ed. 129 (1914), quoted with approval in United States v. Morgan, supra, 346 U.S. p. 509, fn. 15, 74 S.Ct. 251. Relief will be granted only when circumstances compel such action "to achieve justice". United States v. Morgan, supra, 346 U.S. p. 511, 74 S.Ct. p. 252. The critical issue is whether this is such a case.

Here, we are not confronted with a plea entered by an illiterate youth. At the time of trial petitioner was a man of 28 or 29 years who had two years of high school education and was gainfully employed as a headwaiter in an Atlantic City nightclub. The inherent competence of petitioner is attested by the positions of responsibility which he occupied during the ensuing years.[3]

Nor was petitioner unrepresented at the trial. His attorney, Wilderman, was one of his own choosing. Wilderman had studied criminal law at the University of Pennsylvania Law School, had been admitted to the Pennsylvania bar in 1933, and to the New Jersey bar in

---

2. The docket entry and Clerk's notes made contemporaneously with the event would seem to more reliably reflect the plea that was actually entered than the somewhat divergent testimony of petitioner and Wilderman related 24 years later. The notes of the Clerk and docket entry do, however, appear to corroborate the fact that something was said by Judge Avis about the violation being a technical one warranting a one-day sentence.

3. Four years after the trial petitioner became president of the Waiters' and Waitresses' Union in Philadelphia, which had between 2200 and 2500 members. Later, he was appointed International Representative for the State of Florida of the Hotel and Restaurant and Bartenders International Union which had about 15,000 members. In 1954 petitioner was assigned to Buffalo, New York where he became the president of the Hotel & Restaurant Employees' Union which had 2500 members. At the same time he was also president of the Joint Council of four organizations having 5000 members. His area of responsibility covered a radius of 150 to 200 miles where he negotiated contracts with 150 employers.

1935. He was associated with a New Jersey law firm engaged in the general practice of the law. Although he met petitioner for the first time in the courtroom the morning of the trial and talked to petitioner for only about ten minutes, during this time petitioner told him everything that he knew about the case.

■ There is no suggestion that Wilderman was incompetent or unfaithful to petitioner's interest. The most that can be said is that he was young, his experience in criminal matters was limited, and his trial preparation was probably less extensive than it should have been.[4]

Petitioner did not enter his plea until after he had consulted with Wilderman out of hearing of the Court. Although the consultation lasted for only a few minutes, so far as the record discloses, the Court imposed no time limitation which would have prevented more extended consideration. Only after Wilderman had advised petitioner to enter the plea did he do so. Wilderman testified that he advised petitioner to enter the technical plea because it was his "strategy that that was the proper thing to do * * * and that it was in his (the petitioner's) best interest". He said, "I advised him to do it." According to Wilderman petitioner replied, "You are the lawyer and I will go along with your opinion. After all, you are the lawyer."

Lawyers generally are prone to accept suggestions which emanate from the bench. Young and inexperienced lawyers are apt to be especially amenable to views which the court expresses. And Wilderman was probably no exception. Undoubtedly, when Judge Avis advised petitioner to change his plea from one of

not guilty to a "technical plea of guilty", and stated that if petitioner did so he would be sentenced to only 24 hours in the custody of the Marshal, Wilderman gave weight to this advice. But there was another consideration of a compelling kind which underlay his decision. Wilderman testified that when Judge Avis called him to the bench, he gained the impression that Judge Avis might have to let the case go to the jury. Wilderman testified that he felt that this was quite a risk for the petitioner to undertake since at that time there was a great deal of hysteria about prostitution because of raids in Atlantic City, New Brunswick, and Camden. He said that if the case should go to the jury, "I felt here we were kind of playing with a great deal of fire", and that by taking Judge Avis' advice he would "minimize the risk of an eventual probable verdict of guilty and the perhaps more severe imposition of penalty".

Wilderman testified that he felt that the plea which petitioner entered was not "a full plea of guilty" and that petitioner was not pleading guilty to a Mann Act violation "in the fullest sense". But at the trial Wilderman recognized and advised petitioner that if he should go to trial and be found guilty of a "technical violation", the Judge could impose a serious sentence because "they [the judges] don't draw distinctions". Since Wilderman was of the opinion and advised petitioner that if the jury should find the petitioner guilty, the judge would not differentiate between technical and substantial guilt in imposing sentence, it is difficult to perceive how either Wilderman or petitioner could have believed that the effect of a plea of guilty to a technical violation of the law would

4. The petitioner makes no claim that he was denied the effective assistance of counsel in the constitutional sense.

The services of counsel meet the requirements of due process when he is a member in good standing at the bar, gives his client his complete loyalty, serves him in good faith to the best of his ability, and his service is of such character as to preserve the essential integrity of the proceedings as a trial in a court of justice. Only when the representation of an attorney is so lacking in competence or good faith that it becomes the duty of the trial judge or prosecutor as officers of the state to observe and correct it, is there a denial of due process. United States ex rel. Darcy v. Handy, 203 F.2d 407, 427 (3rd Cir., 1953).

be any different from a plea of guilt generally.

It cannot be supposed that Judge Avis threatened to submit the case to the jury in the belief that petitioner was innocent. Although petitioner in effect so testified, the District Court stated "Judge Avis was not persuaded of petitioner's innocence." This finding was not attacked in this Court. It was justified not only because of the inherent improbability of petitioner's testimony given twenty-four years after the event, but because petitioner's testimony was inconsistent with Wilderman's version of what Judge Avis said.

It has been stated broadly that out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). But the pertinent question is: what consequences? To hold that no valid sentence of conviction can be entered under a plea of guilty unless the defendant is first apprised of all collateral legal consequences of the conviction would result in a mass exodus from the federal penitentiaries. The collateral effect of a federal conviction varies, depending upon the offense, and whether state or federal law is involved. State laws are far from uniform. The effect of a conviction as an admission in a later civil action, upon the credibility of the defendant as a witness, his right to vote, his qualification to hold office, its sentencing significance under "second offender" laws, and its deportation relevance in the case of aliens, are but a few of the areas in which a federal conviction can have important collateral legal significance.

■ Despite the breadth and frequency of the judicial statements that a defendant cannot be held to a plea of guilty which is made without an understanding of its consequences, the factual situations which have occasioned the statements afford no basis for holding that the finality of a conviction depends upon a contemporaneous realization by the defendant of the collateral consequences of his plea. United States v. Parrino, 212 F.2d 919, 921–922 (2d Cir., 1954); cert. den. 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954).

■ Any such requirement would impose upon the judge an impractical burden out of all proportion to the essentials of fair and just administration of the criminal laws. The instant case illustrates the point. The only consequence of the petitioner's conviction which enables him to present a justiciable controversy concerning its validity, is the deprivation of petitioner of his voting rights in New York. Yet at the time of the trial the petitioner lived in New Jersey. Under New Jersey law, as it existed in 1938 and at the present time, one convicted of a Mann Act violation is not disenfranchised.[5] The trial court was not required to explain to petitioner the disenfranchising effect of the conviction which alone gives petitioner a standing to attack it. The court could not possibly have realized its significance unless it had foreseen that sixteen years later the petitioner would take up residence in New York. Due regard for the constitutional rights of those accused of crimes has properly resulted in the imposition of increasingly onerous responsibilities on trial judges. But unsolicited advice concerning the collateral consequences of a plea which necessitates judicial clairvoyance of a superhuman kind can be neither expected nor required.

Federal Criminal Rule 11 which became effective seven years after the plea of petitioner had been entered, is substantially a restatement of prior law. See Notes of Advisory Committee on Rules, which follows Rule 11 in 18 U.S. C.A. at p. 298. Rule 11 prohibits a court

---

**5.** The New Jersey statute that lists the crimes which work a voting disqualification does not include a Mann Act violation or any comparable offense. See N.J. S.A. 19:4–1, in its former and present form.

from accepting a plea of guilty without first determining that the plea is voluntarily made with understanding of the nature of the charge. In the instant case it is not claimed that the plea of the petitioner was not entered voluntarily or without knowledge of the nature of the crime alleged in the indictment. Beyond this, the petitioner has been advised by Wilderman that if he went to trial and was found guilty, he might be subjected to a severe sentence of imprisonment even though his violation of the statute was technical, whereas if he pleaded guilty his sentence would be inconsequential. The choice which petitioner made, insofar as it directly affected his legal rights, was fully comprehended. The District Court properly concluded that it would be unreasonable to say that the plea of petitioner was entered without sufficient knowledge or adequate advice.

Petitioner makes the further contention that at common law, as under Criminal Rule 11, there are only three possible pleas in a criminal case—guilty, not guilty, and *nolo contendere*. It is argued that a plea of guilty to a technical violation of the law is unknown to the law, and hence it cannot constitute a valid foundation for a sentence. This objection is a purely formal one. Technical objections to precise verbiage of a plea were given much more weight formerly than they are now. Garland v. State of Washington, 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772 (1914). There, the Court sustained a state court conviction even though at the arraignment the defendant had entered no plea of any kind, because the trial had proceeded in all respects as though a formal plea of not guilty had been entered. In

Mayes v. United States, 177 F.2d 505 (8th Cir., 1949), the Court refused to vacate a federal judgment and sentence of imprisonment when defendant's attorney had stated that his client wished to enter a plea of guilty, and the defendant, after having been asked by the court whether the charges were correct, answered "Yes, sir." Relying upon Garland v. Washington, supra, the Court said that mere failure to comply with precise ceremonial or verbal formality when a plea is entered at an arraignment does not constitute a denial of due process for which a conviction must be set aside. The fact that in the case before us petitioner's words may not have precisely conformed to the traditional "guilty" is of no substantive importance.

We do not condone the conduct of the trial judge in suggesting the plea to be entered accompanied by a promise of the sentence which was to follow. It is not a salutary practice and it is one that should be avoided. Nevertheless, in the instant case no claim is made that the Judge coerced the petitioner into entering his plea,[6] that he made sentencing promises which he failed to keep,[7] or that he misinformed petitioner of the collateral effect of the plea. Only when the record discloses errors of fact in the trial proceeding of such a fundamental kind as to render the proceeding itself irregular or invalid, or to require a vacation of the conviction and sentence in order to achieve justice, will *coram nobis* relief be granted against a satisfied judgment of conviction. Errors of this magnitude are not discernible in the record before us.

The judgment of the District Court will be affirmed.

6. Indeed coercion is implicitly disavowed in paragraph 17 of the petition, and in paragraph 6 of the affidavit of Wilderman supporting it. These verified statements indicate that if petitioner and Wilderman had understood the consequences of the plea, it would not have been entered and the trial would have continued. They highlight the fact that petitioner's only claimed basis for relief is his lack of understanding of the consequences of the plea. The situation before us is, there-

fore, sharply distinguishable from Euziere v. United States, 249 F.2d 293 (10th Cir., 1957) where a sentence was set aside because a plea of guilty had been coerced by the court.

7. Statements found in United States v. Paglia, 190 F.2d 445, 447 (2nd Cir., 1951) involving a plea of guilty induced by a promise by the prosecuting officer to request a light sentence, which promise was later broken, are clearly irrelevant.

BIGGS, Chief Judge (concurring in part and dissenting in part).

I agree with the majority that the issue presented is neither moot nor barred by lapse of time. But I cannot agree that the petitioner, Cariola, is not entitled to relief. The writ of error *coram nobis* is apt for the purpose for which it is sought. See United States v. Morgan, 346 U.S. 502, 503–513, 74 S.Ct. 247, 98 L.Ed. 248 (1954), and generally, "The Writ of Error Coram Nobis," Freedman, 3 Temple L.Q., p. 365 et seq.

The petitioner testified that the trial judge stated in the course of the proceedings that he thought that the United States had not proved its case and that the petitioner had committed only "a minor violation", "a technical violation", of the Mann Act. The attorney for the petitioner, an inexperienced member of the bar, testified that the judge said that "he didn't think it was much of a case there by the government; that at the most this [offense] was the most technical violation possible that you could think of [sic]", and suggested that the petitioner should enter "a technical plea of guilty", and that if the petitioner did so he would sentence him to twenty-four hours in the custody of the United States marshal. The docket entries show that the petitioner's plea of not guilty was then withdrawn and a plea of guilty was "entered as a technical one" "by the order of the court."

The petitioner is entitled to the writ sought by him.

First, a "technical" plea of guilty is unknown to the federal law. The court below could not enter a valid judgment of conviction on such a plea. It lost jurisdiction of the case when it tried to do so. It follows that the court's act in entering the judgment of conviction was *coram non judice*, a nullity.

Second, there was bargaining between the court and the petitioner and his attorney for a light sentence if the technical plea of guilty was entered by the petitioner. The bargain was consummated despite the fact that the judge, as the present record shows—and we must accept that record as it stands in the absence of anything more—stated that he thought that the United States had not proved its case. If the court was of this view, it should have directed a verdict in favor of Cariola. The course which the court pursued is repugnant to our present day views of justice under the law and, in my opinion, the judgment of conviction is voidable and should now be voided as contrary to public policy.[1]

Third, the petitioner was induced to enter the plea, not by the United States attorney or by his deputy, but by the action of the judge himself. As was said by the Court of Appeals for the Tenth Circuit in Euziere v. United States, 249 F.2d 293, 294–295, (1957), a case bearing some resemblance to that at bar: "Fundamental standards of procedure in criminal cases require that a plea of guilty to the charge or charges contained in an indictment or information be entered freely, voluntarily, and without any semblance of coercion." The persuasion employed by the court in the instant case in my opinion must be deemed to be the equivalent of coercion. The prestige and influence of a United States district judge, particularly in relation to a defendant under indictment who stands before him for trial, is so enormous that a strong suggestion from the judge amounts to a command and a command that must be obeyed. Cariola had counsel of his own choosing but by that counsel's own admission at the time of the proceeding against Cariola since he had been practicing for only a short time he had but

---

1. Ordinarily, allowing withdrawal of a plea of not guilty and the substitution of a plea of guilty is a matter which rests within the sound discretion of the court. Compare Rule 32(d), Fed.R.Crim.Proc., 18 U.S.C. See United States v. Swag-gerty, 218 F.2d 875 (7 Cir.), cert. denied, 349 U.S. 959, 75 S.Ct. 889, 99 L.Ed. 1282 (1955). But the action of the court here transcends an abuse of discretion and was impermissible under the circumstances at bar.

small experience in criminal law. It takes wisdom and experience as well as strength to withstand the suggestion of a United States judge under the circumstances at bar. In my judgment Cariola was deprived of due process of law. See Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942).

This aspect of the case should be judged from another pertinent angle. A plea of guilty, made voluntarily and deliberately, to the charge of an indictment is not only a waiver of a right to a jury trial and a consent to the imposition of any sentence authorized by law,[2] but it is also a confession of guilt. Donnelly v. United States, 185 F.2d 559, 560 (10 Cir., 1950), cert. denied, 340 U.S. 949, 71 S.Ct. 528, 95 L.Ed. 684 (1951). These two aspects of the plea of guilty seem to be joint and logically unseverable. Surely one cannot entertain the slightest doubt that, treating Cariola's plea as a confession, that confession cannot be deemed to be a voluntary one, for it was induced by a promise of reward made by the presiding judge himself, i. e., if you, Cariola, will enter a technical plea of guilty, confess your guilt, you will receive a light sentence, viz., twenty-four hours in the custody of the United States marshal. Had a confession of guilt, "technical" or otherwise, made by Cariola under such circumstances been offered by the United States in the course of Cariola's trial and had been received in evidence, one entertains no doubt that a reversal of the judgment of conviction, had he been found guilty, would have followed. See Ziang Sung Wan v. United States, 266 U.S. 1, 45 S.Ct. 1, 69 L.Ed. 131 (1924) and Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897).

Fourth and finally, it is clear that the petitioner entered the "technical" plea of guilty without any clear understanding of the effect of the consequences which a judgment of conviction would impose upon him. The fact that an accused is represented by counsel of his own choice is insufficient to relieve the trial court of determining that the plea is made voluntarily and with an understanding of the nature of the charge. This principle is embodied in Rule 11, Fed.R.Crim. Proc., 18 U.S.C.[3] It is also set out fully and explicitly in Kercheval v. United States, 274 U.S. 220, 223–224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). The Supreme Court said: "Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads he may be held bound." The principle so stated, in so far as I am aware, has never before been questioned. If a defendant is not aware of and does not possess a full understanding of the consequences of his plea, the court shall advise him and make certain that his comprehension is adequate. If this be not done it is necessary to conclude that the court loses jurisdiction of the cause and cannot enter a valid judgment of conviction. It is obvious here that the United States can offer no rebuttal in the instant case to Cariola's assertions that he was not aware of the consequences of his plea and it does not appear, and cannot be made to appear, that his then inexperienced counsel or the court advised him of the effect of his "technical" plea of guilty.

For the reasons stated I am convinced that Cariola was denied his rights under the Fifth Amendment and therefore I must respectfully dissent from the refusal of the majority to grant the writ of error *coram nobis* and to vacate the judgment of conviction.

2. It may be observed that in Kercheval v. United States, 274 U.S. 220, 223, 47 S. Ct. 582, 71 L.Ed. 1009 (1927), it is stated that a plea of guilty "is itself a conviction".

3. There can be no suggestion that Rule 11 effected any substantial change in the law. See Notes of Advisory Committee on Rules.