Bland WILLIAMS, Petitioner,

v.

STATE OF NEW JERSEY, Howard D. Yeager, Warden, New Jersey State Prison, Respondents.

Civ. A. No. 203–64.

United States District Court
D. New Jersey.

June 15, 1964.

Bland Williams, pro se.

WORTENDYKE, District Judge:

Bland Williams was convicted in the Essex County Court (New Jersey) of murder in the first degree, with a recommendation of life imprisonment, to which he was duly sentenced. He appealed his conviction to the New Jersey Supreme Court on several grounds, including ineffective representation by counsel, the sole ground he urges here. That Court unanimously affirmed the conviction, State v. Williams, 1963, 39 N.J. 471, 189 A.2d 193. Thereafter Williams sought a writ of certiorari from the Supreme Court of the United States, which was denied, 1963, 374 U.S. 855, 83 S.Ct. 1924, 10 L.Ed.2d 1075.[1]

The indictment upon which the present petitioner was convicted was returned by the grand jury in and for the County of Middlesex, New Jersey, in which County petitioner and other alleged participants in the murder were tried together in 1957. Upon that trial, petitioner was convicted of murder in the first degree and sentenced to death. He appealed that conviction to the New Jersey Supreme Court, which reversed, State v. Butler, 1958, 27 N.J. 560, 143 A.2d 530. Following remand upon reversal, petitioner was again brought to trial in the Middlesex County Court, and during that trial, he sought and was granted leave to with-

1. Petitioner's application was filed in this court on March 12, 1964, two months after N.J.R.R. 3:10A, establishing the exclusive procedure for obtaining post-conviction relief in the New Jersey courts (other than by appeal or motion after trial), became effective on January 2, 1964. Although it is questionable whether such post-conviction relief would have been available to petitioner in New Jersey courts when he filed his petition here (see N.J.R.R. 3:10A–5), he was obliged, under 28 U.S.C. § 2254, to pursue fully only one form of State remedy with respect to the question on which he bases his application for Federal habeas corpus, Brown v. Allen, 1953, 344 U.S. 443, 447–450, 73 S.Ct. 397, 97 L.Ed. 469. By pressing his claim of inadequate representation to final disposition on appeal to the New Jersey Supreme Court, petitioner has met the exhaustion of remedies requirement and was not obliged to seek post-conviction relief under N.J.R.R. 3:-10A, on the same ground, even if it were available to him, before applying to this court for habeas corpus relief.

In a letter received by the Court on June 2, 1964, the petitioner alleges, although not under oath, that, on the night of the murder of Quackenbush, certain law enforcement officers, after the discovery of the victim's body, observed a yellow convertible automobile speeding out of Carteret, New Jersey, gave chase thereto, and discovered therein "4 white boys; a baseball bat freshly washing (sic) off and blood stain on the floor mat of the car." Petitioner now charges that the owner of the Little Cotton Club had instigated the crime which was actually committed by the four white boys, and that "the owner of the Little Cotton Club was roving the streets, associated with a Carteret Judge * * * for the establishment of an alibi should need arise."

The Court has considered petitioner's said letter as part of his pending habeas corpus application, but it cannot be employed as a ground for such application because it was not raised on petitioner's appeal to the New Jersey Supreme Court and petitioner has therefore not exhausted his State remedies on this ground, 28 U.S.C. § 2254. I have, however, caused the letter to be filed with the Clerk of this Court.

draw his plea of not guilty and to enter a plea of non vult to second degree murder. Upon the acceptance of the latter plea, petitioner was sentenced to ten to fifteen years imprisonment. Some time thereafter, petitioner, through the assigned attorney of whose conduct he presently complains, successfully applied to the Middlesex County Court for leave to withdraw his plea of non vult to second degree murder, upon the claim that it had not been voluntarily and understandingly made. The motion to withdraw the non vult plea was granted, the judgment of conviction and sentence imposed thereon were vacated, a plea of not guilty was re-entered, and Williams went to trial on June 12, 1961, on the original indictment, represented by the same assigned counsel who had represented him on the motion to withdraw the plea. The last trial was held in Essex County as a result of the success of assigned counsel in applying to the Middlesex County Court for a change of venue. From his last conviction of murder in the first degree with the recommendation of life imprisonment, petitioner appealed to the New Jersey Supreme Court, through other assigned counsel.

In its opinion, the New Jersey Supreme Court points out (39 N.J. 471, 476, 189 A.2d 193) that the appellant-defendant admitted in his brief that the testimony against him in the case was, in all essential respects, the same as that summarized by the same Court in Williams' prior appeals from his former convictions, 27 N.J. 560, 143 A.2d 530 and 32 N.J. 166, 160 A.2d 8. The principal witness for the State on all of the trials of the participants in the charged offense was an accomplice, John Coleman. His testimony, as summarized in 39 N.J. at p. 476, 189 A.2d 193, disclosed that, in the evening of July 19, 1956, Coleman met Williams and his brother, Eugene, with Butler and Winbush, at the Little Cotton Club, a tavern in Carteret, New

Jersey.[2] They entered a 1949 Buick automobile operated by Bland Williams, shortly before midnight, and the five of them drove from the Little Cotton Club to Koppers Koke Company's office building in Port Reading, Middlesex County, where Coleman and Winbush were stationed as look-outs by Butler, who was in charge, while Butler and the Williams brothers forced their way into the building. As the watchman (Quackenbush), alerted by the noise, approached, Butler and the Williams brothers came out of the building. Butler beat the watchman with a pickaxe, while the Williams brothers attacked him from the front, until he fell and died. Butler and the Williams brothers next dragged a safe out of the office and unsuccessfully attempted to force it open. Butler then blew up the safe with nitroglycerin, which he had brought with him, and Coleman ran from the scene. Bland Williams, the present applicant for the writ, denied any connection with the robbery and killing. Although he admitted having seen Coleman on occasion, Bland Williams testified that he did not "know" him and that on July 19, 1956 he had never left the city of Perth Amboy, but had spent the evening at a tavern there until about midnight, when he went directly to his room in the same city and slept through the night. He was arrested on August 28, 1956 at his place of employment in Woodbridge.

The sole ground upon which the applicant bases his present petition for a writ of habeas corpus is to be found in his contention that, at his most recent trial, he was deprived of a fair and impartial trial "due to the ineffectiveness of trial counsel." He was represented by Alex Eber, Esq., an eminent and experienced member of the New Jersey Bar for 30 years, and formerly Prosecutor of Middlesex County, New Jersey. There was also assigned to defendant's representation, as Mr. Eber's assistant, Henry

---

2. Coleman testified that he was forced by Bland Williams, at the point of a knife, to participate in the robbery.

Spritzer, Esq., of the same Bar, and to both of these attorneys were made available the services of a competent investigator to aid them in the preparation of the defense.

Petitioner's contention here is the same as one of several which he raised on the appeal of his conviction to the New Jersey Supreme Court, i. e., that the conduct of his assigned counsel at · the last trial deprived petitioner of due process under the Fourteenth Amendment. The specific allegations of that claim are fully detailed in the petitioner's brief on appeal to the New Jersey Supreme Court (prepared by another assigned attorney) and in a statement by petitioner which was filed, in typescript form, as a supplement to the record on that appeal. Copies of both the brief and the statement were furnished to this Court by the Prosecutor of Middlesex County, and they have been considered by the Court as part of petitioner's instant application.[3]

Petitioner complains that his assigned counsel at the last trial was ineffective in his attack on the credibility of the

---

3. The statement of petitioner was taken by his then assigned counsel on appeal and transcribed by an official court reporter in an ex parte examination of petitioner, while he was incarcerated, without notice to and in the absence of a representative of the State. The following is a pertinent extract from that statement:

"Q Well, up until the time that the trial was·going on, did you know whether or not these witnesses who were in jail with Coleman were going to be called or not? A I assumed they were because that is why he got them up there in the County Jail, for the purpose of testifying.

"Q You don't remember any discussion with Mr. Eber that he was not going to call them; that he had made a decision not to call these witnesses? A No, not until we was in Essex County.

"Q During the trial, or before the trial? A That was before the trial.

"Q He told you, then, that he wasn't going to call those witnesses? A Yes, he told me then that he wasn't going to call them. Maybe that was before. It wasn't before the trial, but it was as the trial was going on in Essex County—not before, but during—but before my side of the case had come up.

"Q While the State was putting its evidence on? A Yes.

"Q What did you say to him when he told you that he wasn't going to call these witnesses? A I asked him to get all the witnesses and all the evidence that was necessary·to prove my case, and he had explained to me that he was the lawyer and he had more knowledge that (sic) I did, and he would carry it out the way that he saw fit to, and if I insist on him getting those witnesses, that it was my right to get them, but he would ask to be withdrawn from my case.

"Q Did you ask him to withdraw from the case? A I told him I would not ask him to withdraw from the case because he was appointed to me by the Supreme Court to fight for my justice and my rights, and if it be a mistake in it, if I be convicted, that he would be my subject for a new trial for misrepresentation.

"Q Now, at the Butler trial there were four witnesses who testified that John Coleman was not competent to testify and they are numbers 13, 14, 15 and 16 on page 4 of the letter. Did you discuss with Mr. Eber whether or not he was going to call those witnesses? A I did.

"Q What was said? A I asked him to call these witnesses because he was trying to prove that Coleman's ability to testify was inconsistent and we asked them to call the doctors that is experts.

"Q Well, just for a minute, stick with these witnesses on competency. When did you speak to him about this? A This was sometime before the trial was in process.

"Q Was it up in Essex County or in Middlesex? A It was both Middlesex and Essex.

"Q Did he tell you at that time that he didn't think he would call these witnesses? A He only told me in Essex County before my side of the case was coming up that he weren't going to call them.

"Q Did he tell you that he hadn't made up his mind when you were in Middlesex, or what was the general nature of the discussions? A He said that he would probably call them, but his idea was to get Coleman—to make Coleman look as off as possible before the jury.

"Q As what? A As off as possible before the jury, so they would know whether to believe him or not, and he was deciding whether it was necessary.

"Q Is this something he told you? A It might not be in any particular words, but this was the sense that he was making me understand, that after he put a

prosecution's chief witness, John Coleman, and failed or refused to comply with petitioner's insistence that he call witnesses who might discredit Coleman. Petitioner argues that his counsel could have discredited Coleman by (1) calling a number of witnesses who had testified in an earlier trial that Coleman was unreliable and untrustworthy as a witness; (2) by calling witnesses who would have testified, as he says they did on a previous trial, that Coleman had made prior statements inconsistent with his testimony at the trial; (3) by calling previously testifying witnesses who would have contradicted Coleman as to particular facts; and (4) by subjecting Coleman to a searching cross-examination to discredit him in the eyes of the jury. Petitioner's complaint is that Mr. Eber, his assigned trial attorney, relied only on the fourth method of discrediting Coleman, and called only one of the thirty-five witnesses who, he says, had testified for the defense on the previous trial in which petitioner's then attorneys had used the other three methods of attacking Coleman.[4] Petitioner claims that his assigned counsel alone decided, over petitioner's objections, not to call any of the witnesses who, petitioner asserts, could have discredited Coleman, and who had testified at the previous trials.

This Court did not hold a hearing on petitioner's present application. As noted above, the Court obtained the trial transcript and copies of the brief filed on behalf of petitioner and of his supplemental statement (see footnote 3, supra), both of which were filed on his appeal to the Supreme Court of New Jersey.

According to petitioner's appellate brief and supplemental statement, testimony on the prior trial was given by thirty-one witnesses. Five experts testified as to Coleman's unreliability; nine witnesses testified as to his unreliability or his prior inconsistent statements; and seventeen witnesses contradicted him as to particular factual statements made by him. The supplemental statement (quoted in part in footnote 3) discloses that petitioner asked his assigned counsel at the last trial, to get all these witnesses and put them on the stand. Petitioner says that his counsel had previously told him that he had not decided whether he was going to use these witnesses to attack Coleman; that he was planning to destroy Coleman before the jury by cross-examination; and that he was debating whether putting on these witnesses would impress the jury or take their minds off the picture they received of Coleman on his cross-examination. In response to petitioner's inquiry at the trial, his attorney informed him that he had decided not to call the suggested witnesses. Petitioner says that the attorney stated, in response to petitioner's objections, that he was the lawyer; that he would carry on the trial as he saw fit; that petitioner could insist on these witnesses being called, but, if so, the attorney would withdraw from the case. Petitioner did not ask counsel to withdraw, but threatened that, if convicted, he would use counsel's decision as a basis for a new trial based on inadequate representation.

Respecting the merits of petitioner's claim, and accepting as true all his alle-

---

picture of Coleman before the jurors, he was deciding whether it would be necessary to keep on with other evidence that would influence the jury and take their mind off Coleman after he was deciding on that.

"Q And up in Essex County, he told you what his decision was? A Yes.

"Q What did you say to him when he told you? A Well, there wasn't anything actually I could say except I still insisted on the best way for my innocence

to be proved to the jury—I asked him to get the witness. As I said before, he said he would withdraw from the case if I insisted on the witness to be got."

4. Petitioner also claimed that the assigned counsel failed to use previous testimony which would have discredited "peripheral aspects" of the prosecution's case; but the substance of his complaint is the failure to discredit Coleman by means in addition to that of cross-examination.

gations for the purpose of the present application, he does not challenge the appointment of the particular attorney, nor his qualifications, nor his loyalty to petitioner, nor his good faith in representing him. He challenges only his conduct of one aspect of the trial by claiming that his failure to attack Coleman's credibility, by methods other than and in addition to cross-examination, was ineffective representation which, he asserts, resulted in conviction and the denial of due process of law to the petitioner.

■ The standard of due process for measuring the effectiveness of representation by assigned counsel in a State court prosecution, has been expressed as follows: " '[A]bsence of effective representation of counsel * * * must mean representation so lacking in competence that it becomes the duty of the court or the prosecution to observe and correct it,' " In re Ernst's Petition, 3 Cir. 1961, 294 F.2d 556, 558, cert. den. 1961, 368 U.S. 917, 82 S.Ct. 198, 7 L.Ed. 2d 132, quoting from Diggs v. Welch, 1945, 80 U.S.App.D.C. 5, 148 F.2d 667; United States v. Cariola, 3 Cir. 1963, 323 F.2d 180, 185, footnote 4. Cf. United States ex rel. Darcy v. Handy, 3 Cir. 1953, 203 F.2d 407, cert. den. Maroney v. United States ex rel. Darcy, 1953, 346 U.S. 865, 74 S.Ct. 103, 98 L.Ed. 375; Mitchell v. United States, 1958, 104 U.S. App.D.C. 57, 259 F.2d 787, cert. den. 1958, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed. 2d 86. Specifically, in a challenge to the effectiveness of assigned counsel's conduct of the trial, his actions or inactions do not constitute a lack of effective representation if they " * * * could well have been part of a rational plan of a competent lawyer trying to do his best for his client" In re Ernst's Petition, su-

pra, 294 F.2d p. 560. That conduct is not to be judged in the light of the verdict which was actually rendered, but from the viewpoint of the attorney while the trial was actually going on. Any trial may involve misjudgment in strategy by even the most competent of counsel, and an adverse verdict should not be the occasion for speculation on whether a variation in strategy would have changed the result, unless the choice adopted could not be said to have been part of such a rational plan of action by competent counsel. Mitchell v. United States, supra, 259 F.2d 789-793.[5]

The attorney, of whose conduct petitioner complains to this court, appeared for petitioner in the Middlesex County Court after petitioner had retracted his plea of guilty of murder in the first degree and had entered a plea of non vult to murder in the second degree. The motion to retract and the proffer of the plea of non vult was made in behalf of the present petitioner by his then assigned attorney, Russell Fleming, Esq., on February 3, 1959. Mr. Fleming had represented Bland Williams on his first trial and upon his successful appeal from conviction of first degree murder therein. Mr. Fleming, to the knowledge of this Court, is an experienced, reputable member of the New Jersey Bar, to which he was admitted in the year 1918.

On October 31, 1960, after the present petitioner had been sentenced upon his plea of non vult, Mr. Eber, as assigned counsel, moved the Middlesex County Court to permit Bland Williams to withdraw his plea of non vult and to again enter a plea of not guilty to the indictment. In support of this motion, petitioner, through Mr. Eber, urged the following grounds: That the plea of non

5. It appears, upon the face of the record, that the strategy employed by petitioner's counsel at the last trial, which dispensed with the calling of witnesses to attack Coleman's story, was justified even by the result of the trial. The testimony of the witnesses, whom petitioner claims he requested his attorney to call for the purpose stated, was not only inefficacious to

destroy Coleman, but the trial in which they did testify resulted in a verdict of guilty of first degree murder *without* recommendation of imprisonment in lieu of execution. Mr. Eber's conduct of petitioner's last trial resulted in a verdict of guilty *with* a recommendation against execution.

vult was not made by the petitioner; that the plea was made by assigned counsel and was accepted without a determination by the Court that it was voluntary and made with an understanding of the nature of the accusation; that the acceptance of the plea by the court under the circumstances constituted manifest injustice and violated constitutional due process. The motion to withdraw the plea of non vult was granted by order of the Assignment Judge in Middlesex County on December 16, 1960. The judgment of conviction and sentence was vacated, and a plea of not guilty to the indictment was again entered in behalf of the defendant. Mr. Eber's assignment as counsel was continued for the purpose of the trial. A subsequent motion in behalf of petitioner, through Mr. Eber, to limit petitioner's guilt under the indictment to murder in the second degree was denied by order filed February 23, 1961.

Mr. Eber, moreover, participated actively in behalf of petitioner at the pretrial conference of March 27, 1961, which resulted in the order of that date, reciting that petitioner agreed that he would not question the competency of John Coleman as a prospective witness, if called by the State, upon the approaching new trial, which was fixed therein to commence on April 17, 1961. At the conclusion of that trial, petitioner was again convicted of first degree murder. Following the judgment of conviction, Mr. Eber moved for a new trial in behalf of the petitioner, urging ten separate grounds therefor. The motion was denied.

This Court has obtained the trial transcripts of all of the trials in which petitioner has been a party upon the indictment charging him with first degree murder; they aggregate the stupendous total of almost 9500 pages. Assuming that this Court were able to find the time to read all the testimony of the witnesses whom the petitioner now claims should have been called on the last trial, such an Herculean effort would not enable this Court to determine whether Mr. Eber, petitioner's trial counsel, was justified in the strategy which he employed by the situation confronting him. Even accepting as a fact that the many witnesses who testified previously would have testified in petitioner's most recent trial as he now claims they would have, a perusal of the 289 pages embodying the cross-examination of Coleman by Mr. Eber, indicates conclusively that petitioner's attorney achieved by that cross-examination alone, a result which, in the judgment of this writer, could be considered by the jury as completely effective to discredit Coleman.

Mr. Eber could reasonably have concluded that the effect obtained on his cross-examination would have been vitiated by putting on an additional thirty-one witnesses during the defendant's case in an already protracted trial. And assuming those witnesses would have testified as petitioner says they would have, Mr. Eber could also have concluded that they would not have added much more to what he had already elicited from Coleman on cross-examination. I must, therefore, conclude that Mr. Eber could have reasonably concluded, as part of a rational plan of defense, that it would be better strategy to rely solely on his cross-examination, and not call the thirty-one additional witnesses. Mr. Eber's conduct, as counsel, on this aspect of the trial, did not therefore constitute ineffective representation of the petitioner and did not deny him due process of law.

Because the allegations of the petition, as supplemented by the brief and statement filed with the State appeal, and the transcript of the trial, do not on their face reveal any merit to petitioner's claim of denial of effective representation by Mr. Eber as a ground for habeas corpus, the petition will be dismissed without the necessity for any additional examination by the Court of the facts supporting the petition, United States ex rel. Darcy v. Handy, supra, 203 F.2d 427–428. There is thus no question of whether this Court should

hold an evidentiary hearing on the petition pursuant to Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770.

It is, therefore, on this 15th day of June, 1964, Ordered, for the reasons hereinabove stated, that the petition of Bland Williams for a writ of habeas corpus be and hereby is dismissed.