**In re Ethel KRAVITZ.**

**No. 635.**

United States District Court,
M. D. Pennsylvania.

March 7, 1979.

Harold Cramer, Philadelphia, Pa., for petitioner.

Ronald T. Williamson, Asst. Dist. Atty., County of Montgomery, Norristown, Pa., for respondent.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Presently before the Court is petitioner's motion for relief under Federal Rule of Civil Procedure 60(b)(6) from a 1965 judgment dismissing her habeas corpus action. In this Court's memorandum and order of August 2, 1978, I concluded that Rule 60(b)(6) applied in a habeas corpus action filed prior to February 1, 1977, and that the first requirement for Rule 60(b)(6) relief, "exceptional circumstances," had been demonstrated. With regard to the second requirement, the question of whether the motion was filed within a reasonable period of time, an evidentiary hearing was scheduled and petitioner and respondent were given an opportunity to present evidence. The hearing was held August 28, 1978.[1] Proposed findings of fact and conclusions of law, along with supporting memoranda, were filed by the parties and the matter

---

1. At the hearing, counsel for petitioner requested the opportunity to examine the contents of petitioner's file with the Pennsylvania Board of Probation and Parole. In the alternative, petitioner sought an in camera inspection. Respondent objected and reaffirmed that objection by letter to the Court dated August 30, 1978; a copy was directed to petitioner's counsel. Petitioner has not renewed her request for an inspection, in camera or otherwise, and the file remains with the court unopened.

became ripe for determination on November 21, 1978.[2]

As noted in earlier opinions, the issue of the reasonableness of the delay in filing this motion for Rule 60(b)(6) relief involved two periods of time, one from 1966 to 1968 and the other from 1970 to 1975. Although the court has summarized the background facts of this case previously, another brief recitation will assist in illuminating the significance of both periods and in judging the reasonableness of petitioner's actions.

Petitioner was convicted of the 1958 murder of her husband by a Montgomery County jury in 1959. Her appeals were unsuccessful and in 1965, while still incarcerated, she filed this federal habeas corpus action. On August 25, 1965, this court, per Judge Follmer, denied the habeas corpus petition, concluding (1) that petitioner's contentions were not supported factually by the state court record and the record of the habeas corpus hearing; and (2) that, with respect to the remaining ground of the petition, she had failed to exhaust her state court remedies. The Court of Appeals for the Third Circuit affirmed the 1965 decision in March, 1966, holding, *inter alia,* that petitioner had failed to exhaust state remedies with regard to the contention that certain of her statements to prosecuting authorities had been involuntarily obtained. See In re Kravitz, *358 F.2d 734 (1966)* (per curiam).

Under these rulings, petitioner was then obligated to file for post-conviction relief in the state courts. Obviously, a motion for relief from judgment in this court would have been inappropriate at that time since the basis for such a motion, i. e. the ultimate refusal of state courts to consider her post-conviction petition, was then unknown. Nevertheless, the Court will examine her actions in filing for state post-conviction relief in order to determine the reasonableness of the delay in presenting the motion now before the Court. As will be discussed in more detail infra, the state post-conviction petition was not filed until June 1968, slightly more than two years after the Court of Appeals affirmance. The final decision on the state post-conviction petition was rendered in 1970, with the Pennsylvania Supreme Court concluding that the issue of the admissibility of the alleged statements was a matter that had been "waived" under state law. *See Commonwealth v. Kravitz,* 441 Pa. 79, 269 A.2d 912 (1970). No additional legal action attacking her conviction was undertaken until September 1975, approximately four and one-half years later.

The crucial question here is not the precise nature of the legal actions taken, since use of Rule 60(b)(6) in this context is quite novel, but rather whether the delays in taking further formal legal action of some sort were reasonable.[3] The action taken in 1975 was the filing of a new habeas corpus petition in the United States District Court for the Eastern District of Pennsylvania. This new petition was dismissed by the District Court, and that dismissal was affirmed by the Court of Appeals on February 23, 1977. On May 4, 1977, about two months

2. On December 2, 1978, respondent filed a motion to dismiss this habeas corpus action on the ground that petitioner had waived the remaining issue in her petition. In the court's memorandum and order of August 2, 1978, the remaining issue was defined as petitioner's "claim that statements made in the absence of counsel were inadmissible in the criminal prosecution. . . ." It is respondent's contention that a "deliberate bypass" occurred when, and merely by virtue of the fact that, petitioner failed to raise this issue on direct appeal. This matter has been addressed by the court in a prior opinion. *See* Memorandum and Order of August 2, 1978, at 5 n. 5. Briefs in support of and opposition to the motion to dismiss have been filed, and the motion became ripe on February 27, 1979. That motion will remain under advisement.

3. Since relief under Rule 60(b)(6) in a habeas corpus context was and is a novel proposition, the issue here is not, strictly speaking, the delay in seeking relief by filing a *motion in this court* under Rule 60(b)(6); once the possibility of relief under this rule was suggested by the dissent in *Kravitz v. Pennsylvania,* 546 F.2d 1100 (3d Cir. 1977), the motion was filed within about two months. Rather, I have treated the periods of two years and four and one-half years as material to the question under Rule 60(b)(6) of the reasonableness with which legal relief of any kind was sought.

later, a motion for 60(b)(6) relief was filed in this Court by the petitioner.

### PERIOD 1966 to 1968

■ I am satisfied that the two-year period of delay from petitioner's release in June, 1966 on parole to the filing on June 7, 1968 of a state post-conviction petition was reasonable. After her release in June of 1966, petitioner relocated in New York and was earning about $80 per week as a sales clerk. (Notes of Aug. 28 Hearing Testimony at 107, hereafter "N.T."). Paul Gernert, Chairman of the parole board, testified that the board would not, and did not, process her parole application while litigation on her conviction was pending. (N.T. 95). The accuracy of this statement was borne out by the fact that the adverse decision of the Court of Appeals was rendered in March 1966 and petitioner was promptly released on parole in June, 1966, after the representation by petitioner's counsel that no further action was then contemplated. (Exhibits 25 & 26). At least in petitioner's mind, the statements made by Mr. Gernert to her when her application was being considered and the surrounding circumstances persuaded her that pursuit of relief prior to the expiration of her parole and while on parole release might endanger her parole status. (N.T. 65–66). Nevertheless, notwithstanding her difficult financial situation, her relocation to another state, and the perceived threat of parole revocation, petitioner sought and obtained the counsel of Attorney F. Lee Bailey in early 1967, some six months after her release from confinement. (N.T. 4).

A representation agreement between Attorney Bailey and petitioner was entered into in January, 1967. (Exhibit 5). Shortly thereafter, pursuant to that agreement, petitioner took a polygraph test and performed to Attorney Bailey's apparent satisfaction. (N.T. 10; Exhibit 4). On March 21, 1967, petitioner accepted Mr. Bailey's terms of representation, wherein she agreed to provide Mr. Bailey with promissory notes to cover legal fees. (Exhibits 5 & 7). There the matter rested in Mr. Bailey's hands for a period of time. He testified at the hearing in this court to the press of other business, noting that he undertook the case with the understanding that it would not be given top priority because of her lack of financial resources. (N.T. 10). At petitioner's request, her neighbor and friend, Attorney Leo Vernon, visited Bailey in late 1967 to press him to act more expeditiously. (N.T. 27). Attorney Bailey's response was merely that he would do his best. The petitioner also wrote a letter to Mr. Bailey on January 21, 1968, in which she expressed her concern that "this long delay may very well [be] prejudicing my case." The evidence at the hearing was that Mr. Bailey hired an associate, whom he described as the only other trial attorney in his office. The associate familiarized himself with Pennsylvania post-conviction procedures, and researched the merits of petitioner's case. In June 1968, some 15 months after being retained, Mr. Bailey filed the required post-conviction petition attacking her conviction and seeking to exhaust state remedies as directed. (N.T. 10–11).

During this two-year period, the actions of petitioner were reasonable. Although lacking adequate financial resources, petitioner obtained counsel within a reasonable period and, to the extent she could, pressed counsel to take action as quickly as possible. Attorney Bailey, who enjoys an excellent national reputation as a trial attorney, admittedly did not take action as promptly as possible. While the delay on Mr. Bailey's part of fifteen months could not be completely accounted for by the time necessary to investigate, research, and draft the state court petition, a delay of eighteen months before action was taken by counsel was excused without comment in *United States v. Cariola,* 323 F.2d 180 (3d Cir. 1963).[4]

---

4. The *Cariola* case decided, in the context of a coram nobis proceeding, that an eighteen month delay in seeking relief from a criminal conviction after first learning of the nature of that conviction, was not unreasonable under the circumstances. The conviction had occurred twenty-four years earlier. The *Cariola* opinion does not reflect any showing on the

From the testimony at trial, described *supra,* it is apparent that Mr. Bailey did not handle the petitioner's case as rapidly as it could have been because of his extensive work load and the limited number of other attorneys available to assist him and because of the financial risk associated with petitioner's case and the recovery of his fees. On her part, petitioner pursued the matter as aggressively as she could under the circumstances, given that her financial resources were limited, and her case difficult. The two-year delay was reasonable under the circumstances.

### PERIOD 1970 to 1975

■ I also conclude that the four and one-half year delay in filing formal legal action after the 1970 decision on petitioner's post-conviction action was reasonable under the circumstances. On October 20, 1970, the Pennsylvania Supreme Court rendered an adverse decision on petitioner's Post-Conviction Hearing Act petition, the court having concluded that petitioner had waived or finally litigated the issue that is now before this court.[5] On November 11, 1970, petitioner terminated her relationship with the attorney who had prosecuted the action in her behalf, Attorney F. Lee Bailey. (Exhibit 15).

At this point it was petitioner's responsibility to obtain new counsel if she desired to continue to seek legal relief. She again approached Attorney Leo Vernon and requested that he assist her in this regard. Attorney Vernon approached Emmett Fitzpatrick, a prominent Philadelphia attorney who subsequently became District Attorney of Philadelphia. (N.T. 29–30). Attorney Fitzpatrick had previously acted as local counsel for F. Lee Bailey, and had been peripherally involved in the state post-conviction petition. Mr. Fitzpatrick agreed

to take the case, and met with Mr. Vernon on several occasions, but found it necessary some months later, in May 1971, to apologize for the pace at which he was proceeding, attributing the delay to the illness of an associate. (Exhibit 17). A new habeas corpus petition prepared by Mr. Fitzpatrick was reviewed by Attorney Vernon in July of 1971. Although he apparently was not experienced in criminal matters, Mr. Vernon believed the petition to be deficient in certain respects and advised petitioner to seek other counsel to obtain a more satisfactory document. (N.T. 33–35). She was, during all this period of time, without financial resources with which to pay attorney's fees. And, of course, her case was a difficult one. After consultation with petitioner and with her approval, Attorney Vernon entered into discussions with law professors at Yale University and the University of Pennsylvania in the fall of 1971. (N.T. 35–37). Students at these law schools undertook legal research as an academic exercise for their professors. In late 1971 and early 1972, Vernon approached other attorneys in the Philadelphia area seeking someone to act as counsel for petitioner. The primary barrier to retaining these attorneys was her inability to pay fees. (N.T. 39–41).

In April 1972, Attorney Harold Cramer, who is petitioner's present counsel, was approached for help. He was, at that time, Chancellor of the Philadelphia Bar Association, a position which, along with his normal responsibilities at his law firm, created great demands on his time. He nevertheless undertook to represent petitioner *pro bono.* (N.T. 45–47).

In September 1972, after a full review of her case, Mr. Cramer convinced her to permit him to first explore the possibility of

---

part of the petitioner as to what occurred during the eighteen month period; apparently, the court felt that eighteen months was not an unreasonable period of time for the defendant to obtain counsel and for the attorney to prepare and file a petition for relief. In the more recent case of *Stradley v. Cortez,* 518 F.2d 488 (3d Cir. 1975), relief under Rule 60(b)(6) was denied; a delay of four years was involved, but

the decision rested on an absence of extraordinary circumstances. I have already concluded, in an earlier opinion, that extraordinary circumstances have been shown here.

5. On June 16, 1969, during the pendency of the PCHA action, petitioner was discharged from parole.

obtaining an executive pardon. Although petitioner was not convinced that an executive pardon, if obtained, would constitute the vindication she desired, Mr. Cramer prevailed upon her, arguing that her resort to the courts had thus far yielded nothing in tangible results. In fact, neither this federal habeas corpus when originally heard nor the state post-conviction proceeding had resulted in any evidentiary hearing on the merits of her claim. Executive pardon was pursued informally by Mr. Cramer, relying on his personal contacts with high public officials. Meetings with attorneys general for the state of Pennsylvania and their assistants were held during November, 1972 and April, 1973. (N.T. 47–48). After the final meeting, Mr. Cramer became convinced that an attempt to obtain an executive pardon would be futile, and he concluded that it would be necessary to return to the courts.

In June 1973, an associate of Mr. Cramer's law firm, Richard Shiro, began to assist with research and the preparation of court documents. A decision was made to file a new habeas corpus petition and a declaratory judgment action. Mr. Cramer lost the assistance of Mr. Shiro when Shiro left later that year to teach at the University of Pennsylvania [6] (N.T. 49).

In October of 1973 one of Mr. Cramer's partners, Attorney David Creskoff, assumed a measure of responsibility for petitioner's case. Mr. Creskoff familiarized himself with the lengthy file in her case, but was required to relinquish his responsibility when he was appointed special counsel by a court in California in a complex antitrust case. (N.T. 50). Thereafter another partner, Mr. Norris Gelman, began to work with Mr. Cramer on petitioner's case.

In June 1974, they unsuccessfully sought to obtain from the Montgomery County Court of Common Pleas a transcript of petitioner's trial for murder. (N.T. 50–53).[7]

Mr. Cramer's *pro bono* work on petitioner's behalf continued. His testimony suggests that his work for her was time-consuming and understandably created a certain amount of concern on Mr. Cramer's part that more concentrated efforts would not be fair to his law partners. Mr. Cramer also testified that he was constantly in touch with petitioner and her advisor, Attorney Vernon. Additional research was conducted on both procedural and substantive questions and, in September of 1975, a new habeas corpus petition and a declaratory judgment were filed in the Eastern District of Pennsylvania, raising a number of substantive objections to petitioner's conviction including the contention at issue here. (N.T. 53–61).

During the four and one-half year period of time from 1970 to 1975, the actions of petitioner showed reasonable diligence. She lacked financial resources to hire private counsel, especially of the caliber and reputation of Attorney Cramer. Mindful of her prior experiences, to have sought other counsel while Mr. Cramer was working on the case would have been unwise. Similarly, the actions of counsel, including Mr. Cramer, showed reasonable diligence under the circumstances. In the face of a difficult assignment and many other pressing professional obligations, Mr. Cramer willingly expended considerable periods of time in this matter, *pro bono,* in addition to being confronted, as had earlier counsel, with litigation directed to him personally.[8] The pursuit of other legal remedies, i. e. executive pardon and the new habeas cor-

---

6. The declaratory judgment action was filed in 1975 at the same time as the new habeas corpus and was denied by the third circuit on grounds not pertinent here.

7. The record is not complete on the question of where other copies of the transcripts (at various times in the hands of earlier counsel) were when Mr. Cramer was seeking a copy for his use. When Mr. Cramer was cross-examined by respondent's counsel, he was not questioned as to this matter, and the court will not assume

that prior counsel retained their copies. Rather, the evidence suggests that copies of the transcript were not readily obtainable, due perhaps to the actions of other persons.

8. The record shows that the brother-in-law of petitioner's deceased husband, Mr. Morris Passon, has brought civil actions against both F. Lee Bailey and Harold Cramer regarding matters connected with their representation of petitioner.

pus action, was reasonably prompt under the circumstances here. *See Cariola,* 323 F.2d at 183. From a professional point of view, this case was not only difficult, time consuming, and with minor compensation but also appeared to have minimal chances of success. Furthermore, the reasonableness of this four and one-half year period must be judged in light of the fact that the legal work was undertaken *pro bono.* It would be unjust to deny petitioner's Rule 60(b)(6) motion because legal relief may not have been pursued as vigorously as might have been expected had counsel been fully compensated. From her perspective, she acted as any reasonable person would be expected to act under the circumstances.

## CONCLUSION

The delay in seeking Rule 60(b)(6) relief was reasonable under the circumstances. The motion for Rule 60(b)(6) will be granted, and the court will schedule such further proceedings in this matter as may be appropriate.