Corey Jones v. State of Maryland, No. 16, September Term, 2015

**PETITION FOR WRIT OF ERROR CORAM NOBIS – DOCTRINE OF LACHES – DELAY – PREJUDICE –** Court of Appeals held that: (1) doctrine of laches may bar right to seek coram nobis relief and, in this case, barred petitioner's right to seek coram nobis relief; (2) for purposes of determining whether doctrine of laches bars coram nobis relief, delay begins when petitioner knew or should have known of facts underlying alleged error; and (3) for purposes of determining whether doctrine of laches bars coram nobis relief, prejudice involves not only State's ability to defend against coram nobis petition, but also State's ability to reprosecute.

Circuit Court for Baltimore City
Case No. 299148035

Argued: October 6, 2015

IN THE COURT OF APPEALS

OF MARYLAND

No. 16

September Term, 2015

_____

COREY JONES

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T. (Retired,
Specially Assigned),

JJ.

_____

Opinion by Watts, J.

_____

Filed: December 7, 2015

The doctrine of laches, which is both an "affirmative defense" and an "equitable defense[,]" "'applies whe[re] there is an unreasonable delay in the assertion of one [party]'s rights and that delay results in prejudice to the opposing party.'" State Ctr., LLC v. Lexington Charles Ltd. P'ship, 438 Md. 451, 584, 604, 586, 92 A.3d 400, 480, 491 (2014) (quoting Liddy v. Lamone, 398 Md. 233, 244, 919 A.2d 1276, 1283 (2007)).

We decide: (1) whether, generally, the doctrine of laches may bar the right to seek coram nobis relief, and whether, specifically, the doctrine of laches bars this petitioner's right to seek coram nobis relief; if so, (2) when delay begins for purposes of determining whether the doctrine of laches bars the ability to seek coram nobis relief; and (3) whether, for purposes of determining whether the doctrine of laches bars coram nobis relief, prejudice involves only the State's ability to defend against the coram nobis petition.

We hold that: (1) the doctrine of laches may bar the right to seek coram nobis relief, and barred the petitioner's right to seek coram nobis relief in this case; (2) for purposes of determining whether the doctrine of laches bars coram nobis relief, delay begins when the petitioner knew or should have known of the facts underlying the alleged error; and (3) for purposes of determining whether the doctrine of laches bars coram nobis relief, prejudice may involve not only the State's ability to defend against the coram nobis petition, but also the State's ability to reprosecute.

**BACKGROUND**

This case arose as a result of Corey Jones ("Jones"), Petitioner, having entered a plea of guilty to a drug offense in the Circuit Court for Baltimore City ("the circuit court") in 1999 and thirteen years later, in 2012, filing a petition for coram nobis relief after being

subject to sentencing as an armed career criminal[1] in the United States District Court for the District of Maryland. In bringing the petition for coram nobis relief, Jones contended that he pled guilty to an offense other than possession of heroin with intent to distribute, one of the predicate offenses to be used for his enhanced sentence in federal court.

Specifically, on May 28, 1999, in the circuit court, in Case Number 299148035, the State charged Jones with distribution of heroin (Count I), use of a minor for the purpose of distributing heroin (Count II), possession of heroin with the intent to distribute (Count III),[2] and possession of heroin (Count IV).

On September 14, 1999, the circuit court conducted a guilty plea proceeding. Jones's guilty plea proceeding was conducted simultaneously with that of another individual, Charles Turner ("Turner"). The transcript begins with the following statement by the prosecutor: "Your Honor, we have, I understand, agreements on State versus Charles Turner, 299092045 . . . . [a]nd State versus Corey Jones, 299148034 and 035." Jones's counsel stated that she was both appearing on Jones's behalf and "standing i[n]" for Turner's counsel.[3] The prosecutor stated: "[W]e would be proceeding under Count II of the case ending in 035 . . . . [s]ix years, suspending all but the first eighteen months, three

---

[1]See 18 U.S.C. § 924(e).

[2]Then (as now), the maximum term of incarceration for use of a minor for the purpose of distributing heroin was twenty years, and the maximum term of incarceration for possession of heroin with the intent to distribute was twenty years.

[3]The record does not reveal any connection between Jones and Turner, aside from the fact that Jones and Turner pled guilty at the same proceeding and were represented at that proceeding by the same lawyer.

years['] probation."[4]  Count II of Case Number 299148035 was use of a minor for the purpose of distributing heroin.

During the guilty plea colloquy, Jones's counsel elicited the following information from Jones.[5]  Jones was thirty-five years old, had completed the ninth grade, and could read and understand English.  Jones was not under the influence of any drugs, alcohol, or medications that could have clouded his thinking.  Jones had never been a patient in a mental hospital or under the care of a psychiatrist or psychologist.

The prosecutor read a statement of facts, which we set forth below:

> With respect to Corey Jones, on April the 3rd, 1991,[6] at approximately 12:30 in the afternoon, Officer Shawn Johnson of Western District Baltimore City Police was in a covert position to walk the 1100 block of North Stricker Street in Baltimore City for suspected drug transactions when he observed the Defendant identified in the courtroom today as Mr. Corey Jones, and another individual later identified as a Juvenile, last name of Thompson, [and] a clear sandwich [bag] containing white objects.  Mr. Thompson then entered 1103 North Stricker Street and came back out to the street.  Both individuals were heard yelling, "Rough rider, rough rider out."
>
> An unidentified individual approached Mr. Thompson, the juvenile, and engaged in a brief conversation.  Mr. Thompson then went back into the building of 1103 North Stricker, which was later identified as a vacant dwelling and gave the individuals a small white object in exchange for U.S. currency.  After observing such actions two to three times, [O]fficer Johnson believed he witnessed a narcotics transaction, called for an arrest team.
>
> Both individuals were stopped.  A clear sandwich bag was recovered inside the dwelling.  21 gelatin capsules of suspected heroin were inside.  It

---

[4]The prosecutor stated that once the plea in Case Number 299148035 was "completed, the State w[ould] nolle prosequi [Case Number 2991480]34."

[5]Jones's counsel asked Turner the same questions that she asked Jones.

[6]It appears that this is a typographical error by the court reporter or a misstatement by the prosecutor and that it should read "1999"; indeed, in his brief, Jones wrote "(sic)" after the year "1991."  Moreover, the record reveals that Jones was arrested on April 3, 1999.

appeared to the officer to be the same guy [sic] that he had seen Mr. Jones handing over to Mr. Thompson. $38 U.S. currency was found on Mr. Jones'[s] person; $10 U.S. currency was found on Mr. Thompson. The suspected controlled dangerous substance was subsequently tested and found to be a controlled dangerous substance, Schedule I, heroin. I would submit the chemical analysis to the Court as State's Exhibit 1.

The circuit court found that the facts sufficed to support Jones's guilty plea, entered a verdict of guilty, and sentenced Jones to six years of incarceration, with all but eighteen months suspended and with credit for time served, followed by three years of supervised probation. The circuit court stated explicitly: "I find then those facts are sufficient to support the plea." During the guilty plea colloquy, Jones's counsel had informed Jones and Turner that they were "each pleading guilty to a count of possession with intent to distribute." In response, Jones stated, "[y]es, ma'am[,]" indicating that he understood that he was pleading guilty to possession of heroin with intent to distribute. The circuit court found that Jones's guilty plea was "knowing and voluntary."

Nonetheless, the docket entries state that Jones pled guilty to use of a minor for the purpose of distributing heroin in Case Number 299148035, and that all three other charges, including possession of heroin with the intent to distribute, were dismissed or closed in Case Number 299148035.

At the conclusion of the guilty plea proceeding, Jones's counsel advised Jones of his right to apply for leave to appeal within thirty days. Jones failed to move to withdraw his guilty plea, move for a new trial, apply for leave to appeal, move to set aside an unjust or improper verdict, or petition for post-conviction relief.

On August 24, 2005, Jones pled guilty to violating the order of probation.[7] The circuit court sentenced Jones to three years of incarceration.[8]

On July 23, 2012, in the United States District Court for the District of Maryland, Jones pled guilty to being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). Due, in part, to his 1999 conviction in the Circuit Court for Baltimore City, Jones was subject to a mandatory minimum of fifteen years of incarceration under 18 U.S.C. § 924(e)(1), the statute known as the Armed Career Criminal Act. But for this conviction, Jones would have been subject to a maximum of ten years of incarceration under 18 U.S.C. § 924(a)(2).

On October 9, 2012, Jones filed a petition for a writ of error coram nobis in the circuit court. In the coram nobis petition, Jones contended that his 1999 guilty plea was involuntary because he had not been informed of the elements of the offense or nature of the charge to which he pled guilty; Jones argued that the transcript of the guilty plea proceeding left unclear whether he had pled guilty to use of a minor for the purpose of distributing heroin or possession of heroin with the intent to distribute. On November 27, 2012, the State filed a response to the coram nobis petition in the circuit court. In the response, the State contended that the doctrine of laches barred Jones from seeking coram

---

[7]The record does not reveal how Jones violated the order of probation.

[8] Although the commitment record that was signed by the circuit court indicates that Jones pled guilty to "PWID Heroin with use of a minor (VOP)[,]" this commitment record was executed on August 24, 2005, after Jones's violation of probation. "PWID" stands for "Possession With Intent to Distribute," and "VOP" stands for "Violation Of Probation." The commitment record references both offenses and was not executed at the time of the guilty plea for the 1999 conviction.

nobis relief; alternatively, the State argued that Jones's 1999 guilty plea was voluntary.

On December 7, 2012, the circuit court conducted a hearing on the coram nobis petition. The State called as a witness Officer Johnson, the officer who had seen Jones on April 3, 1999 (the day of Jones's arrest).[9] Officer Johnson testified that, after reviewing the statement of charges[10] and an "offense report" he had prepared in connection with the case, he had no independent recollection of Jones or the arrest. Officer Johnson testified that he had looked for, but could not find, the folder from the Baltimore Police Department for Jones's case.

In an order dated January 18, 2013, the circuit court granted the coram nobis petition. The State appealed, and, in an opinion dated November 25, 2014, the Court of Special Appeals reversed, holding that the doctrine of laches barred the coram nobis petition. See State v. Jones, 220 Md. App. 238, 242, 103 A.3d 745, 748 (2014). On January 12, 2015, Jones filed in this Court a petition for a writ of *certiorari* in which he raised the following two issues: (I) "Did the Court of Special Appeals err when it held that the doctrine of laches barred [] Jones from seeking coram nobis relief?"; and (II) "Was [] Jones'[s] guilty plea neither knowing nor voluntary . . . ?" In an order dated March 27, 2015, this Court granted the petition. See Jones v. State, 442 Md. 194, 112 A.3d 373 (2015).

---

[9]At the time of the hearing on the coram nobis petition, Officer Johnson was a deputy of the Harford County Sheriff's Office.

[10]It appears that the statement of charges is the statement of probable cause contained in the record, which was completed by Officer Johnson on April 3, 1999.

## DISCUSSION

### A. Contentions

Jones contends that the circuit court was correct in concluding that the doctrine of laches did not bar his ability to pursue coram nobis relief. Jones does not dispute that the doctrine of laches may preclude an individual's ability to pursue coram nobis relief and may be used as an affirmative defense; instead, Jones argues that the doctrine of laches does not apply in this case.

As to unreasonable delay, Jones asserts that, for purposes of determining whether the doctrine of laches bars his ability to seek coram nobis relief, calculation of any delay begins from the date on which the petitioner is able to file a facially valid coram nobis petition. Accordingly, Jones maintains that, here, his delay began on October 1, 2012, when Md. Code Ann., Crim. Proc. (2001, 2008 Repl. Vol., 2015 Supp.) ("CP") § 8-401 ("The failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error coram nobis.") became effective. Until then, Jones would not have been able to file a facially valid coram nobis petition because he had never applied for leave to appeal, and thus may have been deemed to have waived his right to file a coram nobis petition in light of Holmes v. State, 401 Md. 429, 431, 932 A.2d 698, 699 (2007) ("[A] presumption that an individual waives his right to file a petition for a writ of error coram nobis arises if the individual, after entering a guilty plea and having been informed of his right to file an application for leave to appeal, does not file an application

- 7 -

for leave to appeal.").[11]  Under Jones's theory, his delay lasted only eight days (from October 1, 2012 to October 9, 2012).

Alternatively, Jones contends that his delay began on July 23, 2012, when he pled guilty to being a felon in possession of a firearm in federal court, as, until then, he would not have been able to file a facially valid coram nobis petition because he had not been facing significant collateral consequences from his 1999 conviction.  Under Jones's alternative theory, his delay lasted less than three months (from July 23, 2012 to October 9, 2012).  Next, Jones argues that, even if his delay began in 1999 (when he pled guilty to a drug offense), the thirteen-year delay was not unreasonable because: (1) nothing in the record indicates that he knew of his right to petition for post-conviction relief; (2) nothing in the record indicates that he knew that the circuit court had erred in finding his guilty plea voluntary until he spoke with the lawyer who represented him in his federal case; and (3) he lacked an incentive to challenge his guilty plea because he received a relatively light sentence.

As to prejudice, Jones asserts that, for purposes of determining whether the doctrine of laches bars his right to seek coram nobis relief, prejudice involves only the State's ability to defend against the coram nobis petition and not the State's ability to reprosecute the case.  Alternatively, Jones maintains that, even if prejudice also involves the State's ability to reprosecute, Jones's delay did not prejudice the State because: (1) the State failed to

---

[11]The General Assembly enacted CP § 8-401 to supersede Holmes.  See State v. Smith, 443 Md. 572, 593, 117 A.3d 1093, 1105-06 (2015) ("We have no doubt that CP § 8-401 was passed in response to *Holmes* and supplants that case[.]").

prove that it used due diligence to search for evidence in Jones's case; and (2) the State could offer the offense report that Officer Johnson had completed as a past recollection recorded under Maryland Rule 5-802.1(e).

Alternatively, Jones contends that, even if the State met its burden to prove that his delay prejudiced the State, the doctrine of laches should not apply because: (1) his guilty plea was involuntary; (2) he is facing collateral consequences; and (3) he has served the sentences for his 1999 conviction and his violation of probation.

The State responds that the circuit court erred in concluding that the doctrine of laches did not bar the coram nobis petition. As to unreasonable delay, the State contends that, for purposes of determining whether laches bars the ability to seek coram nobis relief, delay begins when "the petitioner knew or should have known of the [alleged] error[.]" More specifically, the State argues that delay begins when the petitioner becomes aware of the facts underlying the alleged error, regardless of when the petitioner becomes aware of the possible legal remedies for the alleged error. Thus, the State maintains that Jones's delay began in 1999 (when Jones pled guilty and knew of the facts underlying the alleged error). The State asserts that, here, Jones's thirteen-year delay was unreasonable because: (1) in 1999, the circuit court sentenced Jones to six years of incarceration, with all but eighteen months suspended, followed by three years of supervised probation, thus incentivizing Jones to challenge his 1999 conviction; (2) in 2005, the circuit court sentenced Jones to three years of incarceration for violating the order of probation, thus further incentivizing Jones to challenge his 1999 conviction; and (3) the reason for the coram nobis petition was the fact that Jones committed another crime (namely, being a

felon in possession of a firearm).

As to prejudice, the State asserts that, for purposes of determining whether laches bars the ability to seek coram nobis relief, prejudice involves not only the State's ability to defend against the coram nobis petition, but also the State's ability to reprosecute; accordingly, here, Jones's thirteen-year delay prejudiced the State because: (1) convicting Jones again is effectively impossible; and (2) in any event, the State must establish simply that it is in a less favorable position than it was before, and the State has established as much because Officer Johnson, the State's only eyewitness, had no independent recollection of Jones and could no longer find the folder from the Baltimore Police Department for Jones's case. The State maintains that Jones's thirteen-year delay also prejudiced the State's ability to defend against the coram nobis petition because the recording (and, by extension, a full transcript) of Jones's guilty plea proceeding is unavailable.

**B. Standard of Review**

An appellate court reviews without deference a trial court's conclusion as to whether the doctrine of laches bars a party's filing. See State Ctr., 438 Md. at 585, 92 A.3d at 480 ("In reviewing whether the doctrine of laches bars [the plaintiff]s' claims, we review the Circuit Court's determination without deference." (Citing Liddy, 398 Md. at 248-49, 919 A.2d at 1287).[12]

---

[12]In Liddy, 398 Md. at 245, 246-47, 248-49, 919 A.2d at 1284, 1285, 1286, this Court stated:

## C. Coram Nobis Relief

A convicted petitioner is entitled to relief through the common law writ of error coram nobis if and only if: (1) the petitioner challenges a conviction based on "constitutional, jurisdictional[,] or fundamental" grounds, whether factual or legal; (2) the petitioner rebuts the "presumption of regularity [that] attaches to the criminal case"; (3) the petitioner "fac[es] significant collateral consequences from the conviction"; (4) the issue as to the alleged error has not been waived or "finally litigated in a prior proceeding, [absent] intervening changes in the applicable law"; and (5) the petitioner is not entitled to "another statutory or common law remedy" (for example, the petitioner cannot be incarcerated in a State prison or on parole or probation, as the petitioner likely could then petition for post-conviction relief). Rivera v. State, 409 Md. 176, 191 n.6, 973 A.2d 218, 227 n.6 (2009) (quoting Skok v. State, 361 Md. 52, 78-80, 760 A.2d 647, 661-62 (2000)). One possible ground for a coram nobis petition is an allegedly involuntary guilty plea. See Skok, 361 Md. at 70, 760 A.2d at 657.

---

Whether the elements of laches have been established is one of fact . . . . Maryland Rule 8-131[(c) ("[T]he appellate court . . . will not set aside the judgment of the trial court on the evidence unless clearly erroneous[.]")] governs the standard of review for questions of fact, *i.e.*[,] whether the elements of laches have been established. In addition, . . . questions of law, *i.e.*[,] whether the facts taken together are sufficient to sustain the defense of laches, are subject to review under the *de novo* standard. . . . [W]here the issue is whether a party is precluded by laches from challenging an action of another party, we shall review the trial court's ultimate determination of the issue *de novo*[.]

(Citations and paragraph breaks omitted). In State Ctr., 438 Md. at 585, 92 A.3d at 480, citing Liddy, 398 Md. at 248-49, 919 A.2d at 1287, this Court clarified that the standard of review for whether the doctrine of laches bars a party's filing is "without deference."

Recently, in State v. Smith, 443 Md. 572, 576, 117 A.3d 1093, 1096 (2015), this Court addressed waiver of the right to seek coram nobis relief, and held that CP § 8-401 applies retroactively, such that the petitioner did not waive the right to pursue coram nobis relief by failing to file an application for leave to appeal; we further held that the petitioner did not waive the "right to pursue coram nobis relief by not moving to withdraw her guilty plea or filing a petition for post-conviction relief when those avenues of relief were available to her." Our discussion of CP § 8-401 focused on whether the statute applied retroactively; as to that point, we held:

> In summary, CP § 8-401 is both procedural and remedial, and it does not impair any vested right of the State to the "finality" of its judgments of conviction. Moreover, the General Assembly did not express an intent to limit the applicability of the statute to those coram nobis petitions filed after October 1, 2012. Accordingly, CP § 8-401 applies to all "cases pending in court when the statute becomes effective." Applying CP § 8-401 to Smith's coram nobis action, which was pending in court on October 1, 2012, we hold that Smith did not waive her right to coram nobis relief by failing to file an application for leave to appeal.

Id. at 594-95, 117 A.3d at 1106-07 (citation omitted).

As to the doctrine of laches and coram nobis relief, in Holmes, 401 Md. at 487, 932 A.2d at 733 (Raker, J., dissenting), Judge Raker stated that the doctrine of laches may bar coram nobis relief.

### D. Doctrine of Laches

The doctrine of laches, which is both an "affirmative defense" and an "equitable defense[,]" "'applies whe[re] there is an unreasonable delay in the assertion of one [party]'s rights and that delay results in prejudice to the opposing party.'" State Ctr., 438 Md. at 584, 604, 586, 92 A.3d at 480, 491 (quoting Liddy, 398 Md. at 244, 919 A.2d at 1283).

- 12 -

Laches's purpose is to protect "against stale claims[.]" State Ctr., 438 Md. at 585, 92 A.3d at 480 (citation and internal quotation marks omitted).  The party that asserts laches has the burden of proving laches by a preponderance of the evidence.  See Lopez v. State, 205 Md. App. 141, 175, 43 A.3d 1125, 1144-45 (2012) ("[T]he party asserting the defense, the State, must show by a preponderance of the evidence that: (1) there was an unreasonable or impermissible delay in asserting a particular claim; and, (2) that the delay prejudiced the State."), vacated on other grounds, 433 Md. 652, 72 A.3d 579 (2013).

Whether laches applies depends on an evaluation of each case's particular circumstances.  See State Ctr., 438 Md. at 590, 92 A.3d at 483 ("There is no inflexible rule as to what constitutes, or what does not constitute, laches; hence[,] its existence must be determined by the facts and circumstances of each case." (Citation and internal quotation marks omitted)).  "The passage of time, alone, does not constitute laches[, and] is simply one of the many circumstances from which a determination of what constitutes an unreasonable and unjustifiable delay may be made."  Id. at 590, 92 A.3d at 483 (citation and internal quotation marks omitted).  For laches's purposes, "[p]rejudice is 'generally held to be any[]thing that places the [opposing party] in a less favorable position.'"  Id. at 586, 92 A.3d at 481 (quoting Liddy, 398 Md. at 244, 919 A.2d at 1284); see also State Ctr., 438 Md. at 586, 92 A.3d at 480-81 ("'For the doctrine of laches to be applicable, there must be a showing that the delay in the assertion of a right worked a disadvantage to another[.]'" (Quoting Liddy, 398 Md. at 244, 919 A.2d at 1284) (brackets omitted)).

In State Ctr., 438 Md. at 610, 483-84, 92 A.3d at 495, 419, this Court held that laches barred claims against developers and State agencies for alleged violations of the

State Procurement Law. This Court stated: "In determining whether a delay is unreasonable, we must analyze (i) when, if ever, the claim became ripe (*i.e.*, the earliest time at which [the plaintiffs] were able to bring their claims); and (ii) whether the passage of time between then and when the [plaintiffs] filed the complaint was unreasonable." Id. at 590, 92 A.3d at 483. Addressing the first prong, this Court concluded that some of the plaintiffs' claims became ripe more than four-and-a-half years before the plaintiffs sued; other claims became ripe approximately a year-and-a-half before the plaintiffs sued; and still other claims became ripe approximately half a year before the plaintiffs sued. See id. at 483, 603, 92 A.3d at 418, 490-91. Addressing the second prong, this Court stated:

> Laches bars [the four-and-a-half-year-old] claims . . . . The State was open and transparent with the entire "unique" procurement process. The local newspapers covered the matter extensively. If the announced process was illegal, [the plaintiff]s could have—and should have—brought their complaints on that score to court sooner than they did. . . .
>
> [S]ignificant motivations of [the plaintiff]s appear to be a "desire to stave off competition." Their initial objections to the [State Center] Project stemmed from the selection of the Master Developer, which was announced publicly by [the g]overnor . . . more than three years prior to [the plaintiff]s' filing of the Original Complaint. . . . [T]he motivations of the parties matter and indicate that [the plaintiff]s' delay in bringing their claims was unreasonable and unjustified.

Id. at 606, 608, 92 A.3d at 492, 494. Finally, this Court concluded that the delay prejudiced the defendants, stating:

> To allow the [plaintiff]s to bring the claim at the stage in the development when they did caused the State and Developers to waste substantial public funds, if there were any merit in [the plaintiff]s' substantive claims. Although we recognize a taxpayer's interest in the State complying with the competitive bidding and other requirements set forth in the [State] Procurement Law, when obliged to do so, the taxpayer cannot delay bringing suit in such a way that would cost the taxpayers even more money if the

- 14 -

complaining taxpayer was right.

Id. at 609, 92 A.3d at 494.

Similarly, in Liddy, 398 Md. at 236, 919 A.2d at 1278-79, this Court held that laches barred claims against a political candidate, the State Administrator of Elections, and the State Board of Elections based on an assertion that the candidate was ineligible for election under the Constitution of Maryland. The plaintiff sued nearly four months after the candidate filed his certificate of candidacy; more than one month after the candidate won the primary election; and just eighteen days before the general election. See id. at 236-38, 919 A.2d at 1278-80. This Court noted: "[T]he [plaintiff]'s dilatory challenge . . . could have been brought long before not just the general election[,] but the primary election as well. The [plaintiff]'s challenge, in fact, could have been brought at any time after [the candidate]'s [] filing of his certification of candidacy." Id. at 253, 919 A.2d at 1289. This Court concluded that the unreasonable delay[13] prejudiced the State Board of Elections because it had "insufficient time to reprogram, install, and test voting machines, and to redesign, reorder, reprint, and distribute absentee and provisional ballots[.]" Id. at 254, 919 A.2d at 1290. This Court concluded that the unreasonable delay also "prejudiced the electorate as a whole" because "[t]he relief sought by the [plaintiff], *i.e.*[,] the removal of [the candidate]'s name from the ballot, or, in the alternative, signs being posted to indicate [the candidate]'s ineligibility to voters, would have caused a great deal of uncertainty in

---

[13]In Liddy, although this Court did not expressly state that the delay was "unreasonable," this Court must have concluded as much, given that this Court held that laches applied. See Liddy, 398 Md. at 236, 919 A.2d at 1279.

- 15 -

the entire election process." Id. at 254, 919 A.2d at 1290.

By contrast, in Frederick Rd. Ltd. P'ship v. Brown & Sturm, 360 Md. 76, 80, 117-18, 756 A.2d 963, 965, 985-86 (2000), a legal malpractice case, this Court held that a trial court erred in granting summary judgment on the ground of laches because "an issue of fact exist[ed] as to whether the [plaintiffs] had notice of a malpractice cause of action or fraud on the part of the" defendants. This Court stated:

> For a delay to constitute laches, the delaying party must have had notice of a right or cause of action. Therefore, laches cannot be imputed to a party who, through no fault of his or her own, is ignorant of facts giving rise to a cause of action and has, as a consequence, failed to assert it.

Id. at 118, 756 A.2d at 985-86 (citing Berman v. Leckner, 193 Md. 177, 185, 66 A.2d 392, 395 (1949)). In turn, in Berman, 193 Md. at 185, 66 A.2d at 395, this Court stated:

> [I]t is an essential element of laches that the party charged with it should have had knowledge or the means of knowledge of the facts creating [the party's] right or cause of action. Laches cannot be imputed to a party who has been justifiably ignorant of the facts creating [the party's] right or cause of action, and has consequently failed to assert it. Thus, in suits alleging fraud, time begins to run, not from the perpetration of the fraud, but from its discovery. Mere lapse of time will not bar a defrauded party's right to relief while [the party] remains ignorant of the fraud and has no knowledge of facts which would lead a [person] of ordinary prudence to its discovery.

(Citations omitted).[14]

---

[14]In Berman, 193 Md. at 187-88, 185-86, 66 A.2d at 396, 395, this Court held that laches applied where a chancellor (i.e., the finder of fact) discredited a plaintiff's allegation that the plaintiff did not discover an alleged fraud until twenty-five years after the alleged fraud was committed.

## E. Analysis

### 1. Applicability of the Doctrine of Laches

Here, we first address an important preliminary matter. Jones does not dispute that the doctrine of laches may bar the right to seek coram nobis relief in general, but rather asserts that the doctrine of laches does not act as a bar in his case. Lest there be any doubt, however, we hold that the doctrine of laches may bar the right to seek coram nobis relief. Accord Moguel v. State, 184 Md. App. 465, 471, 966 A.2d 963, 967 (2009) ("[T]he doctrine of laches is a defense to a petition for writ of error coram nobis action filed for the purpose of challenging a criminal conviction."); Holmes, 401 Md. at 487, 932 A.2d at 733 (Raker, J., dissenting) ("Laches is a valuable tool for the trial [court] in evaluating a petition for coram nobis."). In other words, we unequivocally hold that the doctrine of laches may, as an affirmative defense in a coram nobis action, bar an individual's ability to seek coram nobis relief.

### 2. Assessment of Unreasonable Delay

To assess whether the doctrine of laches bars an individual's ability to seek coram nobis relief, a court first determines whether the individual unreasonably delayed before filing the petition for coram nobis relief; if so, the court next determines whether the unreasonable delay prejudiced the opposing party. See State Ctr., 438 Md. at 586, 92 A.3d at 481 ("[G]enerally, we must analyze whether, (1) in the context of an equitable claim, (2) there was an unreasonable delay in the filing and, if so, (3) whether there was any prejudice."). In assessing whether the party unreasonably delayed before filing, the court first ascertains the length of the delay, then decides whether the delay was unreasonable.

- 17 -

See id. at 590, 92 A.3d at 483 ("In determining whether a delay is unreasonable, we must analyze (i) when, if ever, the claim became ripe (*i.e.*, the earliest time at which [the plaintiff]s were able to bring their claims); and (ii) whether the passage of time between then and when the [plaintiff]s filed the complaint was unreasonable."). Thus, a court's first task is to determine when the delay began.

Here, the parties sharply disagree about when delay begins for purposes of determining whether the doctrine of laches bars a petitioner's ability to seek coram nobis relief. Jones contends that delay begins when a petitioner may file a facially valid coram nobis petition. The State responds that delay begins when the petitioner knew or should have known of the facts underlying the alleged error. We agree with the State and hold that, for purposes of the doctrine of laches, delay begins when a petitioner knew or should have known of the facts underlying the alleged error—in this case, in 1999, on the date of the guilty plea proceeding.

This Court's precedent compels the conclusion that delay begins when the petitioner knew or should have known of the facts underlying the alleged error. See Frederick Rd. Ltd. P'ship, 360 Md. at 118, 756 A.2d at 986 ("[L]aches cannot be imputed to a party who, through no fault of his or her own, is ignorant of facts giving rise to a cause of action and has, as a consequence, failed to assert it." (Citing Berman, 193 Md. at 185, 66 A.2d at 395)); Berman, 193 Md. at 185, 66 A.2d at 395 ("[I]t is an essential element of laches that the party charged with it should have had knowledge or the means of knowledge of the facts creating [the party's] right or cause of action."); State Ctr., 438 Md. at 590, 92 A.3d at 483 ("In determining whether a delay is unreasonable, we must analyze [] when, if ever,

- 18 -

the claim became ripe (*i.e.*, the earliest time at which [the plaintiffs] were able to bring their claims)[.]"); State Ctr., 438 Md. at 606, 608, 92 A.3d at 492, 494 ("The local newspapers covered the matter extensively. If the announced process was illegal, [the plaintiff]s could have—and should have—brought their complaints on that score to court sooner than they did. . . . [T]he selection of the Master Developer . . . was announced publicly by [the g]overnor[.]").

Our conclusion—that delay begins when an individual knew or should have known of the facts concerning the alleged error—furthers laches's purpose of protecting "against stale claims[.]" State Ctr., 438 Md. at 585, 92 A.3d at 480 (citation and internal quotation marks omitted). An alleged error comes into existence as soon as the facts underlying the alleged error occur; for example, here, the alleged error came into existence as soon as the allegedly deficient guilty plea proceeding occurred in 1999. By the time that Jones filed the coram nobis petition in 2012, the alleged error was thirteen years old—*i.e.*, stale.

Additionally, this conclusion furthers the public's interests in accurately and promptly resolving allegations of error and maintaining the finality of convictions. The sooner an alleged error is brought to the trial court's attention, the sooner the trial court can accurately resolve the allegation of error and provide the petitioner with a remedy, if needed, and the sooner the State can prepare for a reprosecution if needed. Over time, memories (such as those of eyewitnesses to a crime) fade and evidence (such as a recording of a guilty plea proceeding) disappears; thus, delay in raising an alleged error impairs both the State's ability to defend against the allegation of error and the State's ability to reprosecute. See Holmes, 401 Md. at 487, 932 A.2d at 733 (Raker, J., dissenting) ("Laches

- 19 -

. . . can prevent the [State] from being unfairly prejudiced by evidentiary destruction resulting from long, unexcused delay." (Citation omitted)).

In assessing the applicability of the doctrine of laches, it is appropriate to consider the public's interests in accurately and promptly resolving allegations of error and maintaining the finality of convictions; thus, in determining whether laches bars an individual's ability to seek coram nobis relief, a court considers how its decision will affect the public. See State Ctr., 438 Md. at 609, 92 A.3d at 494 ("To allow the [plaintiff]s to bring the claim at the stage in the development when they did caused the State and Developers to waste substantial public funds, if there were any merit in [plaintiff]s' substantive claims."); Liddy, 398 Md. at 254, 919 A.2d at 1290 (An unreasonable delay "prejudiced the electorate as a whole" because "the relief sought by the [plaintiff], i.e.[,] the removal of [the candidate]'s name from the ballot, or, in the alternative, signs being posted to indicate [the candidate]'s ineligibility to voters, would have caused a great deal of uncertainty in the entire election process."); accord Blanton v. United States, 94 F.3d 227, 231 (6th Cir. 1996) ("[S]ound policy dictates that coram nobis claims be brought as early as possible to prevent the suffering imposed by illegal convictions and to prevent the government from being prejudiced in its efforts to reprosecute meritorious cases."); Bartz v. State, 740 So. 2d 1243, 1245 (Fla. Dist. Ct. App. 1999) ("[T]he policy rationale for allowing a laches defense is important[—]to acknowledge the finality of convictions at some point which, in turn, will foster confidence in the judicial system." (Citations omitted)).

Finally, our conclusion is equitable. Laches is an "equitable defense[,]" State Ctr.,

438 Md. at 604, 92 A.3d at 491 (citation omitted), and it is only fair to require a petitioner to bring an alleged error to the trial court's attention without unreasonably delaying after the time at which the petitioner knew or should have known of the facts underlying the alleged error. To hold otherwise would encourage the inequitable result of allowing a petitioner to refrain from challenging an alleged error until doing so suits the petitioner's interests of avoiding a harsher penalty for having committed a new offense.

This case's circumstances provide a prime example of this scenario. In 1999, the State charged Jones with four crimes, at least two of which (use of a minor for the purpose of distributing heroin and possession of heroin with the intent to distribute) each carried a maximum term of incarceration of twenty years. Pursuant to a plea agreement, Jones pled guilty to a drug offense; the circuit court sentenced Jones to six years of incarceration, with all but eighteen months suspended and with credit for time served, followed by three years of supervised probation; and the other charges were closed or dismissed. At oral argument, Jones's counsel contended that Jones lacked an incentive to challenge his guilty plea because he received a relatively light sentence.[15] Thus, Jones did not move to withdraw his guilty plea, move for a new trial, apply for leave to appeal, move to set aside an unjust or improper verdict, or petition for post-conviction relief, even though the nature of the challenge—that his plea was allegedly not voluntary—was known to him at the time. Jones did not challenge his guilty plea until after he had served his sentence (*i.e.*, gotten the

---

[15]Specifically, Jones's counsel stated: "He got a very, very, very good deal, even though it involved incarceration, and he was loath to challenge it. . . . [H]e certainly had every incentive not to challenge it[.]"

- 21 -

benefit of the plea agreement), served a sentence for violating probation, and was subject to an enhanced federal sentence because of yet a later federal crime due in part to his 1999 conviction thirteen years later. It would be absurd to essentially reward Jones for committing a new crime by allowing him to now challenge his thirteen-year-old conviction, and seek to invalidate his bargained-for plea agreement, on the ground that, thirteen years later, he contends that he did not understand the elements of the offense to which he pled guilty.

In determining whether laches bars a party's filing, it is appropriate to consider a petitioner's motivation for not challenging an alleged error until doing so suits the petitioner's interests. See State Ctr., 438 Md. at 608, 92 A.3d at 494 ("[S]ignificant motivations of [the plaintiff]s appear to be a 'desire to stave off competition.' . . . [T]he motivations of the parties matter and indicate that [the plaintiff]s' delay in bringing their claims was unreasonable and unjustified.").

Contrary to Jones's contention, our conclusion is consistent with—and, indeed, supported by—Smith, 443 Md. at 589, 594-95, 117 A.3d at 1103-04, 1106-07, in which this Court held that CP § 8-401[16] applies retroactively to coram nobis petitions that were pending when CP § 8-401 became effective. In Smith, this Court did not address any issue as to the doctrine of laches. See Smith, 443 Md. at 587 n.5, 117 A.3d at 1102 n.5 ("The State's contention that the doctrine of laches bars Smith from obtaining coram nobis relief

---

[16]CP § 8-401's language does not indicate in any way that a failure to seek an appeal in a criminal case cannot be considered in determining whether laches bars the right to seek coram nobis relief.

was not 'raised in or decided by' the Circuit Court or addressed by the Court of Special Appeals. Because the issue is not preserved for appellate review, we do not address it." (Citing Md. R. 8-131(a)).

Indeed, in Smith, concerning waiver, this Court approvingly quoted Judge Raker's dissent in Holmes. See Smith, 443 Md. at 609-10, 117 A.3d at 1115 ("To hold with the State's waiver argument in the present case would 'cut the heart out of the writ of coram nobis in Maryland.'" (Quoting Holmes, 401 Md. at 475, 932 A.2d at 725 (Raker, J., dissenting)) (brackets and footnote omitted)). Significantly, in Holmes, 401 Md. at 487, 932 A.2d at 733, Judge Raker stated that, unlike a waiver through a failure to seek an appeal, laches can—and, in some instances, should—bar a coram nobis petition: "Laches is a valuable tool for the trial [court] in evaluating a petition for coram nobis. . . . **[**Laches] can prevent the [State] from being unfairly prejudiced by evidentiary destruction resulting from long, unexcused delay." (Citation omitted). In other words, Judge Raker's position was that laches can and may bar coram nobis relief where a long, unreasonable delay prejudices the State because of destruction of evidence. It would be completely contrary to Judge Raker's dissent (whose main point this Court endorsed in Smith, 443 Md. at 609-10, 117 A.3d at 1115) to hold that, for purposes of determining whether the doctrine of laches may bar coram nobis relief, delay begins when a petitioner may file a facially valid coram nobis petition; such a conclusion would ignore the delay (often many years, and often involving the loss or non-preservation of evidence) that accrued since the petitioner knew or should have known of the facts underlying the alleged error.

Indeed, it would completely undermine the applicability of the doctrine of laches in

- 23 -

coram nobis cases to adopt Jones's position that delay begins when a petitioner may file a facially valid coram nobis petition. In the context of laches, for purposes of the State's ability to defend against an allegation of error and the trial court's ability to accurately resolve the allegation of error, what matters is **when** the petitioner raises the allegation of error, not **how** the petitioner raises the allegation of error (*e.g.*, in a motion to withdraw a guilty plea, a motion for a new trial, an application for leave to appeal, a motion to set aside an unjust or improper verdict, a petition for post-conviction relief, or a coram nobis petition). The longer the petitioner delays in raising the allegation of error, the more likely it will be that memories will have faded and evidence will have disappeared, thus impairing the State's ability to defend against the allegation of error, the trial court's ability to accurately resolve the allegation of error, and the State's ability to reprosecute if needed.

Another reason that our conclusion is consistent with Smith is that, although both laches and waiver can bar coram nobis relief, they are two very distinct doctrines with different applications. Illustrating the point, in Holmes, 401 Md. at 487, 932 A.2d at 733 (Raker, J., dissenting), Judge Raker stated:

> Unlike waiver, [laches] allows the trial court to consider both the prejudice to the [State] and the reasons for delay. In balancing the two factors, the trial court has more flexibility to allow writs of coram nobis to proceed in those cases where fairness demands an opportunity to be heard on the matter of post-conviction relief.

In other words, whereas waiver has a relatively straightforward (and often strict) application—for example, under Holmes, 401 Md. at 431, 932 A.2d at 699, a failure to apply for leave to appeal was presumptively a waiver of the right to seek coram nobis relief—under the doctrine of laches, a court may consider equitable factors, such as

whether a delay was reasonable and whether the delay prejudiced the opposing party. Indeed, in assessing the applicability of the doctrine of laches, a court must consider each case's particular circumstances. See State Ctr., 438 Md. at 590, 92 A.3d at 483 ("There is no inflexible rule as to what constitutes, or what does not constitute, laches; hence[,] its existence must be determined by the facts and circumstances of each case." (Citation and internal quotation marks omitted)). Thus, this Court's holding as to waiver in Smith, 443 Md. at 576, 589, 117 A.3d at 1096, 1103-04, does not diminish in any way the doctrine of laches's application to an individual's ability to seek coram nobis relief; and, contrary to Jones's hyperbole, our conclusion does not create a rule that a coram nobis petitioner who failed to petition for post-conviction relief is, "as a matter of law, barred by laches[.]"

On a related note, Jones raises a red herring in comparing this case's facts to those of Skok and Smith. Specifically, Jones points out that he, Skok, and Smith were not incarcerated or on parole or probation when they filed coram nobis petitions, and that he, Skok, and Smith raised in the coram nobis petitions constitutional issues that had not been previously litigated. It does not follow, however, that Jones is entitled to seek coram nobis relief. The doctrine of laches was not at issue in Skok or Smith; this Court did not address whether Skok or Smith unreasonably delayed in filing coram nobis petitions, or whether such delay prejudiced the State. Thus, comparing the facts of Skok and Smith to the facts of this case (where laches is at issue) gets us nowhere in assessing when delay begins for purposes of determining whether laches bars the right to seek coram nobis relief.

In any event, Skok and Smith are readily distinguishable. In Skok, 361 Md. at 55-56, 760 A.2d at 648-49, Skok was a native of Italy who had been a lawful permanent

resident of the United States for several years before pleading guilty to possession of cocaine, and a few months later, entering a plea of nolo contendere to another charge of possession of cocaine. For the first conviction, Skok was sentenced to two years' imprisonment, with all but the three days he had already served suspended; for the second conviction, Skok was sentenced to one day imprisonment, with credit for the day he had already served. Id. at 56, 760 A.2d at 649. At some point thereafter, Skok was faced with the threat of removal from the United States and filed a petition for coram nobis relief seeking to have the judgments of conviction vacated. Id. at 56-57, 760 A.2d at 649-50. Similarly, in Smith, 443 Md. at 577, 579, 583, 117 A.3d at 1096, 1098, 1100, Smith, who was not a United States citizen, but who held a green card, pled guilty to conspiracy to distribute marijuana and was sentenced to six months' imprisonment, all suspended, and one year of supervised probation. Like Skok, Smith served no time in prison as a result of her conviction. Nine years later, Smith attempted to reenter the United States after visiting Canada, and the United States Department of Homeland Security detained Smith based on her earlier conviction and initiated removal proceedings. Id. at 577, 117 A.3d at 1097.

By contrast, in this case, Jones was initially sentenced to six years' imprisonment, with all but eighteen months suspended, and three years of supervised probation; later, after violating the order of probation, Jones was sentenced to three years' imprisonment. In other words, Jones was incarcerated for four and one-half years; *i.e.*, Jones's sentence was not a "light" sentence of the type to which the petitioners in Skok or Smith were sentenced. It defies logic to believe that, during four and one-half years of incarceration, it was reasonable for Jones to not raise an issue as to the voluntariness of his guilty plea while

incurring the consequences of imprisonment. Moreover, significantly, neither Skok nor Smith committed new crimes after their initial convictions that led to the threat of removal from the United States and caused them to petition for coram nobis relief. Unlike Jones, both Skok and Smith were faced with immigration consequences stemming from prior guilty pleas. In this case, on the other hand, Jones committed a new crime that resulted in federal prosecution; it was only after that conviction that Jones sought coram nobis relief.[17] As such, analysis of the doctrine of laches as applicable in Skok or Smith, had it been raised, would necessarily be different from our analysis in this case.

We are utterly unpersuaded by Jones's reliance on the following statement in Smith, 443 Md. at 598, 117 A.3d at 1108-09:

> Very often in a criminal case, because of a relatively light sanction imposed or for some other reason, a defendant is willing to forego an appeal[,] even if errors of a constitutional or fundamental nature may have occurred. Then, when the defendant later learns of a substantial collateral consequence of the conviction, it may be too late to appeal[.]

(Quoting Skok, 361 Md. at 77, 760 A.2d at 660). Again, laches was not at issue in Skok or Smith. This Court made the above statement in Skok in the context of holding that the ground for a coram nobis petition can be legal as well as factual, see Skok, 361 Md. at 78, 760 A.2d at 661; and, in Smith, this Court quoted the above statement in Skok in the context of assessing waiver, see Smith, 443 Md. at 598, 117 A.3d at 1108-09. Our conclusion as

---

[17]The issue in the laches evaluation is the reasonableness of the delay; accordingly, we do not address the State's contention that a subsequent crime is not a collateral consequence because such an inquiry goes to whether a coram nobis petitioner has satisfied the requirements for coram nobis relief, *i.e.*, the merits of the coram nobis petition, not whether the petitioner has the right to pursue coram nobis relief or have his or her petition entertained.

to laches—which is both independent of grounds for coram nobis petitions and, as discussed above, sharply distinct from waiver—is entirely consistent with this Court's holding as to grounds for coram nobis petitions in Skok and this Court's holding as to waiver in Smith.

Similarly, contrary to Jones's contention, the Court of Special Appeals's holding in Moguel, 184 Md. App. at 478, 966 A.2d at 971, is consistent with, and even supports, our conclusion. In Moguel, id. at 478, 468, 966 A.2d at 971, 965, the Court of Special Appeals held that laches applied where a petitioner pled guilty to a drug offense in 1984; became subject to collateral consequences when Congress amended federal immigration statutes in the 1990s; and filed a coram nobis petition in 2007. The Court of Special Appeals stated: "[T]he changes in federal laws that had the potential to adversely affect [the petitioner's] immigration status were in effect in 1993 and 1996. At either of those times, [the petitioner] could have filed a petition to challenge his conviction[.]" Id. at 478, 966 A.2d at 971. Jones seemingly relies on this statement to contend that the Court of Special Appeals measured the delay from the date on which the petitioner became subject to collateral consequences in the 1990s. To the contrary, the Court of Special Appeals measured the delay from the date of the petitioner's guilty plea. See id. at 478, 966 A.2d at 970-71 (The petitioner "waited twenty-three years to file a petition to challenge the validity of his guilty plea and conviction. A delay of this length is unreasonable."). Accordingly, the statement of the Court of Special Appeals about the time when the petitioner became subject to collateral consequences in the 1990s went to the reasonableness, not the length, of the delay.

### 3. Cases from Other Jurisdictions

To support his contention that, for purposes of the doctrine of laches, delay is calculated from the date on which a petitioner could file a facially valid petition for coram nobis relief, Jones relies on a series of cases from other jurisdictions, namely: (1) Kirby v. State, 822 N.E.2d 1097 (Ind. Ct. App. 2005); (2) Johnson v. State, 714 N.W.2d 832 (N.D. 2006); (3) Kovacs v. United States, 744 F.3d 44 (2d Cir. 2014); (4) United States v. Akinsade, 686 F.3d 248 (4th Cir. 2012); and (5) United States v. Cariola, 323 F.2d 180 (3d Cir. 1963). In Kirby, 822 N.E.2d at 1100, the Court of Appeals of Indiana stated: "A petitioner can seldom be found to have unreasonably delayed unless he or she has knowledge of a defect in the conviction." (Citation omitted). In Johnson, 714 N.W.2d at 838, the Supreme Court of North Dakota stated the same, quoting from Kirby. The original source of the quotation in Kirby and Johnson is Perry v. State, 512 N.E.2d 841, 843, 844 (Ind. 1987),[18] in which the Supreme Court of Indiana opined:

> Unless a petitioner has knowledge of a defect in [the] conviction or of the means to seek relief from the conviction, [the petitioner] can seldom be said to have delayed unreasonably in seeking relief. . . . Placing a petitioner on inquiry notice from the date of [the] conviction presumes that the petitioner is aware of defects in [the] conviction on the date it is entered, knows of the means by which [the petitioner] may seek relief from the conviction[,] and, armed with this information, acquiesces in the entry of an invalid conviction. Such a presumption is neither reasonable nor realistic.

This case law is unpersuasive because Jones had reason to challenge his conviction years before filing the petition for coram nobis relief and he had reason to know of the basis for

---

[18]Kirby, Johnson, and Perry are cases discussing laches in the context of petitions for post-conviction relief.

challenging the guilty plea on the ground of voluntariness.

Jones also relies on <u>Kovacs</u>, 744 F.3d at 54, 49, in which the United States Court of Appeals for the Second Circuit stated: "Kovacs has supplied sufficient reasons to justify the delay. He . . . was unaware that a writ of coram nobis existed until" seven months before he filed a coram nobis petition. And, in <u>Akinsade</u>, 686 F.3d at 252, the United States Court of Appeals for the Fourth Circuit stated: "[V]alid reasons exist for Akinsade['s] not attacking the conviction earlier. Until physically detained by immigration authorities . . . , Akinsade had no reason to challenge the conviction[,] as his attorney's advice, up to that point in time, appeared accurate." (Footnote omitted). Finally, in <u>Cariola</u>, 323 F.2d at 183, the United States Court of Appeals for the Third Circuit stated: "[P]etitioner did not unreasonably delay seeking relief. It was not until [eighteen] months before his petition was filed that he first learned, as a result of advice from his present attorney, that he had been convicted of a felony and not a misdemeanor."[19] We decline, however, to adopt the reasoning of the out-of-State cases on which Jones relies as it is obvious that Jones knew or should have known of facts that were sufficient to challenge the voluntariness of his guilty plea. We distinguish those cases from the facts of this case, as discussed above.

In the coram nobis petition, Jones contended that his guilty plea was involuntary because he had not been informed of the elements of the offense to which he pled guilty;

---

[19]In <u>Kovacs</u>, <u>Akinsade</u>, and <u>Cariola</u>, the United States Courts of Appeal noted that a coram nobis petitioner cannot unjustifiably or unreasonably delay in filing the coram nobis petition, but those Courts did not label this principle as "laches." <u>See, e.g.</u>, <u>Kovacs</u>, 744 F.3d at 54 ("The critical inquiry is whether the petitioner is able to show justifiable reasons for the delay." (Citation, ellipsis, and internal quotation marks omitted)).

Jones argued that the transcript of his guilty plea proceeding left unclear whether he had pled guilty to use of a minor for the purpose of distributing heroin or possession of heroin with the intent to distribute. Jones was present throughout his guilty plea proceeding; thus, Jones knew or should have known of the facts underlying the alleged error. Rather than reflecting that Jones was unaware or confused about the offense to which he pled guilty, the transcript demonstrates that defense counsel advised Jones that he was pleading guilty to possession with intent to distribute and Jones indicated he understood. If it were actually unclear to Jones whether he was pleading guilty to use of a minor for the purpose of distributing heroin or possession of heroin with the intent to distribute, then Jones could have raised the issue with his counsel and/or the circuit court—either orally at his guilty plea proceeding, or in writing within a reasonable time after his guilty plea proceeding.

### 4. Length of the Delay

Having concluded that, for purposes of determining whether the doctrine of laches bars the ability to obtain coram nobis relief, the delay begins when the petitioner knew or should have known of the facts underlying the alleged error, we ascertain the length of Jones's delay in this case. On September 14, 1999, Jones pled guilty. Jones was present throughout his guilty plea proceeding; thus, Jones knew or should have known of the facts underlying the alleged error (*i.e.*, the allegedly involuntary guilty plea) on September 14, 1999. The alleged error was not based on a case that had not yet been decided or a statute that had not yet been enacted, thus preventing Jones from raising the alleged error, cf. Telink, Inc. v. United States, 24 F.3d 42, 46 (9th Cir. 1994) ("The petitioners' right to challenge their convictions accrued when [a certain Supreme Court case] was decided[.]");

instead, the state of the law was such that Jones could have immediately raised the alleged error—*i.e.*, an involuntary guilty plea. Despite his ability to immediately raise the alleged error, Jones failed to move to withdraw his guilty plea (which he had ten days to do, see Md. R. 4-242(h)), move for a new trial (which he had ten days to do, see Md. R. 4-331(a)), apply for leave to appeal (which he had thirty days to do, see Md. R. 8-204(b)(2)(A)), move to set aside an unjust or improper verdict (which he had ninety days to do, see Md. R. 4-331(b)(1)(B)), or petition for post-conviction relief (which he had nine years to do, see CP § 7-103(b));[20] Jones did not raise the alleged error until he filed the coram nobis petition on October 9, 2012.[21] Thus, Jones delayed for thirteen years and one month.

### 5. Reasonableness of the Delay

Our next task is to decide whether Jones's thirteen-year delay was unreasonable. An assessment of reasonableness of the delay depends on the case's particular circumstances and courts may consider factors such as, but not limited to, the length of the delay, the reason for the delay, the incentive to challenge the prior conviction, and the basis for the coram nobis petition. On this issue, we agree that the State has demonstrated by a

---

[20]Although CP § 7-103(b) is a ten-year statute of limitations on petitions for post-conviction relief, a petition for post-conviction relief can be filed only when a petitioner is incarcerated or on parole or probation. See CP § 7-101. Here, Jones was incarcerated or on probation from 1999 (when he pled guilty) to 2008 (when he finished serving his sentence for violating the order of probation); thus, Jones had nine years to petition for post-conviction relief.

[21]Although the Maryland Rules and Annotated Code of Maryland have been amended since 1999 (when Jones pled guilty), the amendments have not changed the time periods in which an individual must file certain motions, applications, or petitions following a judgment of conviction; thus, above, we refer to the current versions of the Maryland Rules and Annotated Code of Maryland.

preponderance of the evidence that Jones's thirteen-year delay was unreasonable based on the following three circumstances: (1) in 1999, the circuit court sentenced Jones to six years of incarceration, with all but eighteen months suspended, followed by three years of supervised probation, and any allegation as to voluntariness was known or should have been known at that time; (2) in 2005, the circuit court circuit court sentenced Jones to three years of incarceration for violating the order of probation, thus incentivizing Jones to challenge his 1999 conviction; and (3) the reason for the coram nobis petition was that Jones committed another crime (namely, being a felon in possession of a firearm) in 2012. Thus, Jones unreasonably delayed in filing the coram nobis petition.

### 6. Assessment of Prejudice

We next turn to the issue of whether Jones's unreasonable delay prejudiced the State. Our first step is to resolve the parties' dispute regarding whether, for purposes of determining whether the doctrine of laches bars an individual's ability to obtain coram nobis relief, prejudice involves solely the State's ability to defend against the coram nobis petition.

At the outset, we conclude that, for purposes of determining whether laches bars an individual's ability to seek coram nobis relief, prejudice involves not only the State's ability to defend against the coram nobis petition, but also the State's ability to reprosecute. For one thing, "[p]rejudice is 'generally held to be any[]thing that places the [opposing party] in a less favorable position.'" State Ctr., 438 Md. at 586, 92 A.3d at 481 (quoting Liddy, 398 Md. at 244, 919 A.2d at 1284). It also bears repeating that laches is an "equitable defense[.]" State Ctr., 438 Md. at 604, 92 A.3d at 491 (citation omitted). It

- 33 -

would be inequitable—and, indeed, nonsensical—for us to blind ourselves to the State's ability to reprosecute. Whether in a coram nobis matter or in a new trial, the State's interest is precisely the same: to successfully prosecute an alleged violation of the law.

As far as coram nobis petitions in Maryland are concerned, we join the other courts that have held that, for purposes of determining whether laches bars a filing in which a petitioner challenges a conviction, prejudice involves not only the State's ability to defend against the filing, but also the State's ability to reprosecute. See Kirby, 822 N.E.2d at 1100 ("[P]rejudice exists when the unreasonable delay operates to materially diminish a reasonable likelihood of successful re-prosecution." (Citation omitted)); Johnson, 714 N.W.2d at 838 (same) (quoting Kirby, 822 N.E.2d at 1100); In re Douglas, 200 Cal. App. 4th 236, 246 (Cal. Ct. App. 2011) ("[A] substantial delay will prejudice the [government]'s ability to . . . retr[y a petitioner] in the event that a judgment is set aside on habeas corpus many years after the conviction." (Citation and internal quotation marks omitted)); Woodberry v. State, 101 P.3d 727, 731 (Kan. Ct. App. 2004) ("The length of th[e] delay is unreasonable, and the [government] would undoubtedly be prejudiced if forced to retry Woodberry."); Ex Parte Perez, 398 S.W.3d 206, 215 (Tex. Crim. App. 2013) ("[P]rejudice [is] anything that places the [government] in a less favorable position, including prejudice to the [government]'s ability to retry a defendant[.]"); United States v. Darnell, 716 F.2d 479, 480 (7th Cir. 1983) ("The government's ability to meet successfully the allegations of the motion or to present a case against the defendant if he [or she] is granted a new trial may be greatly diminished by the passage of time." (Footnote omitted)); Telink, 24 F.3d at 48 ("In making a determination of prejudice, the effect of the delay on both the

- 34 -

government's ability to respond to the petition and the government's ability to mount a retrial are relevant." (Citing Darnell, 716 F.2d at 480)).

To support the contention that, for purposes of determining whether the doctrine of laches bars an individual from obtaining coram nobis relief, prejudice involves only the State's ability to defend against the coram nobis petition, Jones relies on a series of cases from other jurisdictions as well as one case from the Court of Special Appeals, including: (1) Darnell, 716 F.2d at 481; (2) Moguel, 184 Md. App. at 478, 966 A.2d at 971; (3) Bartz, 740 So. 2d at 1245; (4) Gregersen v. State, 714 So. 2d 1195, 1196 (Fla. Dist. Ct. App. 1998), approved, 758 So. 2d 106 (Fla. 2000); and (5) Oliver v. United States, 961 F.2d 1339, 1342 (7th Cir. 1992). In Darnell, 716 F.2d at 481, the United States Court of Appeals for the Seventh Circuit stated: "Darnell's delay has prejudiced the government in its ability to establish the voluntariness of the 1961 plea of guilty." In Moguel, 184 Md. App. at 478, 966 A.2d at 971, the Court of Special Appeals stated: "Th[e] delay rendered the State unable to rebut any of [the petitioner]'s testimony were he to testify at a merits hearing, and, therefore, prejudiced the State in its ability to defend the validity of the plea." Jones also relies on two cases from the District Court of Appeal of Florida. In Bartz, 740 So. 2d at 1245, the District Court of Appeal of Florida stated: "[T]he State has undoubtedly been prejudiced by the delay, as it cannot now contest Bartz's allegations because the transcript below has long since been destroyed."). And, in Gregersen, 714 So. 2d at 1196, the District Court of Appeal of Florida stated: "[T]here is no transcript available of the plea colloquy. . . . [The petitioner]'s claim is barred by laches." (Citations omitted). Finally, in Oliver, 961 F.2d at 1342, the United States Court of Appeals for the Seventh Circuit stated:

- 35 -

"Oliver's seventeen-year delay in bringing his [post-conviction] action prejudiced the government in its ability to respond to the merits of Oliver's allegations because of its destruction of records after ten years and the unavailability of any other means of producing transcripts of the guilty plea and sentencing."  (Footnote omitted).

In each of these cases, a court held that a delay in filing prejudiced a government's ability to respond to the filing; thus, the Court did not need to address whether the delay in filing also prejudiced the government's ability to reprosecute.  In none of these cases did a Court indicate that prejudice involves only a government's ability to defend against a filing; indeed, as noted above, in Darnell, the United States Court of Appeals for the Seventh Circuit stated the exact opposite.  See Darnell, 716 F.2d at 480 ("The government's ability to meet successfully the allegations of the motion or to present a case against the defendant if he [or she] is granted a new trial may be greatly diminished by the passage of time." (Footnote omitted)); see also Bartz, 740 So. 2d at 1245 (The District Court of Appeal of Florida cited Remp v. State, 248 So. 2d 677, 678 (Fla. Dist. Ct. App. 1970) ("The inordinate delay has made a retrial exceedingly difficult, if not impossible."  (Citation omitted))).

To establish prejudice, the State need not prove that the delay makes it impossible to reprosecute a petitioner; instead, the State must prove simply that the delay places the State "in a less favorable position" for purposes of reprosecuting the petitioner.  State Ctr., 438 Md. at 586, 92 A.3d at 481 (quoting Liddy, 398 Md. at 244, 919 A.2d at 1284) (internal quotation marks omitted); accord Baxter v. State, 636 N.E.2d 151, 152 (Ind. Ct. App. 1994) ("Prejudice as to the [government]'s ability to retry a petitioner does not require a showing of the impossibility to present any case at all."  (Citation omitted)).

- 36 -

In this case, the State has certainly met the burden of proving by a preponderance of the evidence that Jones's thirteen-year delay placed the State in a less favorable position for purposes of reprosecuting Jones. At the hearing on the coram nobis petition, the State called as a witness Officer Johnson, the one who had seen Jones on April 3, 1999 (the day of Jones's arrest). Officer Johnson testified that, even after reviewing the statement of charges and an offense report he had prepared in connection with the case, he had no independent recollection of Jones. Officer Johnson also testified that he had looked for, but could not find, the folder from the Baltimore Police Department for Jones's case. It is difficult to imagine anything more prejudicial than the circumstance that the State's only eyewitness can no longer testify about what the eyewitness saw.[22] Indeed, due to the circumstances—namely, Officer Johnson's inability to remember the case and locate the case folder—the State was placed in a substantially less favorable position.

We are unpersuaded by Jones's reliance on <u>Lacy v. State</u>, 491 N.E.2d 520, 521 (Ind. 1986), in which the Supreme Court of Indiana held that the government failed to meet its burden to prove that it had been prejudiced by a delay in filing where the government "failed to present any evidence regarding the availability or recollection of the investigating officers or the existence or content of the police investigative file." By contrast, here, at the hearing on the coram nobis petition, the State called Officer Johnson, the State's only

---

[22]Because the State has proven that it was in a less favorable position (*i.e.*, has been prejudiced) for purposes of reprosecuting Jones, we need not address whether the State has proven that it has been prejudiced for purposes of defending against the coram nobis petition.

eyewitness, who testified that he could not remember the case. Additionally, Officer Johnson's statement of probable cause was a part of the record in the case; Officer Johnson's offense report, however, is not contained in the record.[23]

We are not convinced by Jones's theory that the State failed to demonstrate prejudice because it could offer Officer Johnson's offense report as his past recollection recorded under Maryland Rule 5-802.1(e). For one thing, even if the State could successfully do so, the State would nonetheless be prejudiced by being forced to rely on a document instead of testimony—which would have constituted more compelling evidence. For another thing, as the State maintained at oral argument, a conviction based solely on an offense report would understandably give rise to challenges under the Confrontation Clause of the Sixth Amendment to the United States Constitution.

We find no merit in the contention that the State failed to prove that Jones's thirteen-year delay prejudiced the State because the State failed to prove that it used due diligence to search for evidence in Jones's case. To support his contention, Jones cites Kirby, 822

---

[23]Jones also misplaces his reliance on Kirby, 822 N.E.2d at 1101, 1101 n.5, in which the Court of Appeals of Indiana concluded that "[t]he evidence [] demonstrate[d] that the [government] was unable to locate all the victims of Kirby's offenses and was unaware of their present addresses[,]" but stated in a footnote:

> We are reluctant to accept [a prosecutor]'s affidavit statement that, in his twenty-two years of experience, he believes that even if all witnesses to Kirby's offenses were found, "the lack of knowledge of specific details that is certain to be lost over a thirty (30) year period would greatly diminish the [government]'s ability to present its case in chief, as proof of prejudice."

(Brackets omitted). By contrast, here, the State relied not on any affidavit, but instead on the testimony of the State's only eyewitness.

N.E.2d at 1100 ("The [government] has an obligation to use due diligence in its investigation of the availability of evidence and witnesses." (Citation omitted)). This Court has never imposed on a party that asserted laches a duty to use due diligence to search for available evidence, but, to the extent that such a duty exists, the State satisfied it in this case. At the hearing on the coram nobis petition, the State called as a witness Officer Johnson, the State's only eyewitness; elicited that Officer Johnson could not remember Jones, even after reviewing the statement of charges and offense report; and elicited that Officer Johnson had looked for, but could not find, the folder from the Baltimore Police Department for Jones's case.

Finally, Jones raises a series of contentions not aimed at the doctrine of laches analysis, but consisting rather of what appear to be equitable arguments that, even if the State met its burden to prove that Jones's delay prejudiced the State, laches should not apply, namely because: (1) Jones alleges that his guilty plea was involuntary; (2) Jones is facing collateral consequences; and (3) Jones has served his sentences for his 1999 conviction and his violation of the order of probation.[24] All of these circumstances pertain to the coram nobis petition's merits, not whether the doctrine of laches barred the coram nobis petition. Because we conclude that laches barred the coram nobis petition, we do not address the coram nobis petition's merits.

---

[24]To the extent that Jones contends that it would not make a difference if his conviction were vacated and he were not successfully reprosecuted, Jones's own position in the coram nobis petition undermines his contention. Specifically, Jones filed the coram nobis petition for the express purpose of no longer being subject to an enhanced federal sentence. Thus, Jones acknowledges that a conviction can have consequences other than the sentence for the conviction itself.

## 7. Conclusion

In sum, we hold that the doctrine of laches may bar the right to seek coram nobis relief, and, in this case, bars Jones's ability to seek coram nobis relief. We further hold that, for purposes of determining whether the doctrine of laches bars the ability to obtain coram nobis relief, delay begins when the petitioner knew or should have known of the facts underlying the alleged error. Finally, we hold that, for purposes of determining whether laches bars the right to seek coram nobis relief, prejudice involves not only the State's ability to defend against the filing, but also the State's ability to reprosecute.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**